F7TVBURA

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          15 CR 73 (RMB)

5   EVGENY BURYAKOV,

6              Defendant.                  ARGUMENT/DECISION

7   ------------------------------x

8                                          New York, N.Y.
                                           July 29, 2015
9                                          11:10 a.m.

10
    Before:
11
                    HON. RICHARD M. BERMAN,
12
                                           District Judge
13

14                      APPEARANCES

15
    PREET BHARARA,
16       United States Attorney for the
         Southern District of New York
17  ADAM J. FEE
    IAN P. McGINLEY
18  ANNA M. SKOTKO
         Assistant United States Attorneys
19
    WHITE & CASE
20       Attorneys for Defendant
    SCOTT E. HERSHMAN
21  OWEN PELL
    KELLY NEWMAN
22

23  ALSO PRESENT:  ANDREW TARUTZ, Russian Interpreter

24

25

F7TVBURA

1          THE COURT:  First we should note that we have a

2     Russian language translator present.

3          I hope you're translating.  Are you?  Everything,

4     until we get to the point where it may not be necessary.

5          So let me ask Mr. Buryakov if he is able to

6     understand, first of all, through the Russian interpreter,

7     that's Question No. 1.

8          THE DEFENDANT:  (In English) Yes, your Honor.

9          THE COURT:  And, second, do you want to use the

10    interpreter or shall we have him here in a standby capacity?

11    It's your call.

12          THE DEFENDANT:  (In English) In a standby.

13          THE COURT:  Okay.  Thanks.

14          So we set this date aside for oral argument.

15          Before we hear from the parties, I want to underscore

16    that whatever we say here today, myself or the lawyers, etc.,

17    in no way interferes with or denigrates the presumption of

18    innocence that applies in a criminal case such as this.

19          So sometimes in these motions we sort of sound like we

20    are talking to the merits, but that presumption of innocence is

21    sacrosanct and it applies unless and until a jury determines

22    the outcome of the case, whether the defendant is guilty or not

23    guilty.  I wanted to make that clear.

24          I want to frame the issue for a moment just by saying

25    that we have a motion from the defense dated June 11, 2015,

F7TVBURA

followed up by a reply also from the defense dated July 17,

2015, in which the defense has moved to dismiss the indictment

in this case and, in the alternative, the defense moves for

what is called a bill of particulars.  That motion is opposed

by the government, which filed its response on or about July 6,

2015.

    And then one other point by way of background.  The

law or the statute that we will be talking about and construing

here this morning is a statute called 18 United States Code,

Section 951 and several of its subsections, in particular, a

subsection (a) and subsection (d), "D," as in David.  There may

be references to other aspects of that statute, as well.

    Just so that it's clear as background, that statute

says, in part, the following:

    Whoever, other than a diplomat or consular officer or

attaché, acts in the United States as an agent of a foreign

government without prior notification to the attorney general,

if required in subsection (b), shall be fined under this title

or imprisoned not more than ten years or both.

    And then the subsection (d), which both sides have

been discussing in their papers, states as follows:

    For purposes of this section, the term "agent of a

foreign government" means an individual who agrees to operate

within the United States subject to the direction or control of

a foreign government or official, except that such term does

F7TVBURA

1     not include -- then there are some exceptions.  The one that we

2     are principally concerned about says:  Does not include any

3     officially and publicly-acknowledged and sponsored official or

4     representative of a foreign government.

5              So with that, I'm happy to hear from defense counsel,

6     I'm happy to hear from the government.  I have read your

7     papers, and I'm pretty far along in an analysis.  I do have

8     some questions of each side, as well, not very many, but one or

9     two.

10             So Mr. Hershman.

11             MR. HERSHMAN:  Thank you, your Honor.

12             Is it all right if I stand here?

13             THE COURT:  Whatever you're more comfortable with.

14    You can use the podium, if you'd like; otherwise, that will

15    work fine.

16             MR. HERSHMAN:  I'll use the podium.

17             Thanks, your Honor.

18             We read your Honor's order with respect to the time

19    limitation of the argument, and we'll adhere accordingly, so I

20    appreciate that.  That was helpful.

21             THE COURT:  If you want, I'll tell you the question or

22    questions I'm going to ask of you; it may be folded into your

23    presentation.

24             So one question relates to a comment or an argument

25    that you have made where you say that there are potentially

F7TVBURA

1    thousands of individuals in the United States like

2    Mr. Buryakov, persons openly working in representative

3    capacities for foreign government agencies and

4    instrumentalities, but in nonconsular, nondiplomatic posts.  So

5    I am going to ask you what that means in your opinion and what

6    the implications of that are.

7              And the other question that I'm going to ask you is

8    part of your motion deals or alleges that the government's

9    allegations are insufficient in the indictment in particular.

10   So the question I'm going to ask you is if the government had

11   alleged in the indictment that the statutory exceptions to

12   registration did not apply to Mr. Buryakov, would this moot the

13   first part of your motion to dismiss.

14             And similarly, when the government goes to present,

15   I'm going to ask them if they have any plans to make such an

16   amendment or supersede or however they go about doing that, if

17   they have an intention to do that.

18             MR. HERSHMAN:  That's very helpful, your Honor.  Thank

19   you.  And I'll address both questions.

20             THE COURT:  Okay.

21             MR. HERSHMAN:  Let me just begin by suggesting

22   something that we all agree on, I believe, to frame the issue.

23   We agree that if the defendant had given notice that he was

24   working for the Russian government, he did not need to register

25   under this statute, under 951.

F7TVBURA

1          So the only question is whether saying that he was

2     working for VEB is saying that he's working for the Russian

3     government for purposes of 951.

4          VEB is a specialized development bank created by

5     Russian law and owned and controlled by the Russian government.

6     The U.S. Government itself has said that VEB is part of the

7     Russian government.  And we pointed your Honor to the places

8     where the government has said so, but it includes and is not

9     limited to the U.S. Department of Treasury press release upon

10    sanctioning VEB as part of the sectoral sanctions that have

11    been implemented under Executive Order 13662 against VEB, in

12    which the U.S. Government states that VEB is a Russian

13    state-owned financial institution that acts as a development

14    bank and payment agent for the Russian government.  It was

15    formed in 2007 pursuant to Russian federal law, and is the

16    legal successor to Vnesheconombank of the U.S.S.R.

17          THE COURT:  Could you spell that perhaps for the

18    reporter just so the record will be clear.

19          MR. HERSHMAN:  Sure.  My apologies.

20          THE COURT:  That's all right.

21          MR. HERSHMAN:  Which was a specialized Russian state

22    bank.  VEB's supervisory board is chaired by the Russian prime

23    minister, and the chairman of the bank is appointed by the

24    Russian president.  VEB acts as an agent for the Russian

25    government for the purposes of, and then the press release

F7TVBURA

1   continues to go on and state these quintessential government

2   functions, which include, but are not limited to,

3   servicing/repaying the sovereign debts of the former U.S.S.R.

4   and Russia, and collecting debts from legal entities of Russia

5   municipal governments, providing and executing state guarantees

6   of Russia and so forth.  These are quintessential government

7   functions.  And, your Honor, we've cited case law in this

8   circuit that confirms that those are quintessential government

9   functions.

10          So the U.S. Government itself has stated that VEB is

11   part of the Russian government.  But we really want to direct

12   your attention, your Honor, to the regulations that expressly

13   define what is a foreign government for purposes of this

14   statute.  These are regulations created by the government, and

15   these are regulations that directly address the question at

16   issue.

17          In 28 CFR, Section 73.1, which is cited repeatedly in

18   our papers, the government has included a definition of

19   "foreign government" for purposes of Section 951.  This is not

20   a definition that they rely on in their papers.  They run away

21   from this definition, although it is expressly relevant and

22   directly relevant to the question at issue.

23          THE COURT:  You cite it in your papers.

24          MR. HERSHMAN:  Yes, we did.

25          The government refers to Section 11 of 18 U.S.C.,

F7TVBURA

which simply says that foreign government as used in that title

includes, and then it goes on to say what is included.  But

this statute specifically addresses the definition of "foreign

government" for purposes of 951, and it is broader, but

inclusive, of what is in Section 11, specifically with respect

to government factions or bodies of insurgents within a country

with which the United States is at peace.  That was the purpose

of Section 11.

73.1 includes that and is broader.  And there it

states specifically that the term "foreign government" includes

any person or group of persons exercising sovereign *de facto* or

*de jure* political jurisdiction over any country other than the

United States or over any part of such country.  And

importantly, it includes, quote, any subdivision or any such

group or agency to which such sovereign *de facto* or *de jure*

authority or functions are directly or indirectly delegated.

In this case, your Honor, the government argues that

VEB does not fall within the definition of a foreign government

capable of sponsoring Mr. Buryakov's visit to the United States

under Section 951 by omitting that part of the regulation that

expressly defines the term "foreign government."

This term, as expressly defined in 73.1, is quite

broad, and it includes a person or group of persons exercising

sovereign political jurisdiction over a country and any group

or agency to which the sovereign authority or functions are

F7TVBURA

directly or indirectly delegated.  As I mentioned, in the press

release the government admits that this is a group of persons

who exercise sovereign political jurisdiction over the Russian

Federation.  And, more important, it is an agency to which

sovereign authority or functions have been directly and/or

indirectly delegated.

          The Russian prime minister, as mentioned and admitted

by the government in their press release, is the head of the

supervisory board.  And the members of the supervisory board,

your Honor, include first deputy chairmans of the Russian

government, deputy chairmans of the Russian government,

minister of economic development of the Russian Federation,

deputy chairman of the Russian government, an aide to the

president of the Russian government, the finance minister of

the Russian Federation, and the chairman of the bank.

          There is no question that those are --

          THE COURT:  Is your client on that board?

          MR. HERSHMAN:  No, he is not, your Honor.  My client

is a representative of that bank.

          THE COURT:  Okay.  So I wouldn't mind if you get to

one of the questions I posed.

          So does that mean that everybody who works for VEB

Bank in New York, janitor, secretary, I don't know how many

people there are, does that mean they are all covered as

Mr. Buryakov is?

F7TVBURA

| | |
|---|---|
| 1 | MR. HERSHMAN:  No, your Honor.  It would cover people |
| 2 | with supervisory responsibilities, which Mr. Buryakov clearly |
| 3 | had at the bank. |
| 4 | THE COURT:  Where does that delineation come from that |
| 5 | they have to have supervisory responsibility? |
| 6 | MR. HERSHMAN:  That is in the case law, and it's in |
| 7 | the -- I think we cite it, in 73.1, a more expansive definition |
| 8 | of what is a person who would fit the definition in that |
| 9 | particular respect.  It would not apply to janitors, it would |
| 10 | not apply to temporary workers; it would apply only to |
| 11 | supervisory persons, of which he clearly is. |
| 12 | THE COURT:  Where exactly is that language? |
| 13 | MR. HERSHMAN:  I'll show you the page, your Honor. |
| 14 | Let me direct you to that page. |
| 15 | If your Honor turns to 73.1(e).  I'm getting you the |
| 16 | page in our brief that says this. |
| 17 | (Pause) |
| 18 | MR. HERSHMAN:  Just one second, your Honor.  I'll pull |
| 19 | it.  It is an important point. |
| 20 | (Pause) |
| 21 | MR. HERSHMAN:  I will suggest, by the way, that there |
| 22 | is no dispute by the government that Mr. Buryakov had |
| 23 | supervisory responsibilities. |
| 24 | THE COURT:  I'm just trying to figure out who's in and |
| 25 | who's out. |

1          MR. HERSHMAN:  Right.  Got it.

2          (Pause)

3          MR. HERSHMAN:  If you look on page 11 of our

4   memorandum of law in support of the motion, this is Subsection

5   (b), we refer to the argument your Honor is addressing now

6   where 951(d)(2) follows a separate statutory exemption for a

7   narrow class of foreign persons, and then proceeds to statutory

8   exemption for a wider class of foreign persons, namely, any

9   member of a staff of or employee of individuals described in

10  (1) and (2).  And the argument, therefore, is that 951(d)(2),

11  which is this section that is relevant here, reaches a class of

12  foreign officials and representatives who, like Mr. Buryakov,

13  as VEB's deputy representative, do not on the one hand qualify

14  as diplomates or consular officers under (d)(1), but who, on

15  the other hand, occupy more senior roles than staffers under

16  (d)(3).

17          THE COURT:  Is that where you draw the conclusion that

18  there are potentially thousands of individuals in the United

19  States like Mr. Buryakov, those thousands of people all fit

20  into this statutory scheme?

21          MR. HERSHMAN:  Yes.  But they are not limited to

22  Russian Federation agencies.  It would include every foreign

23  country.

24          THE COURT:  The thousands are from every country, not

25  just, of course, from Russia?

F7TVBURA

1          MR. HERSHMAN:  Yes.

2          Russia and many other countries have state-owned

3   economic investment banks, so it would be France, Japan,

4   Canada, China, even the United States does, EXIM Bank.

5          The point that we were making, your Honor, is that

6   there has never been a prosecution of anyone in a position like

7   Mr. Buryakov, because clearly Mr. Buryakov and anyone similar

8   to him in a supervisory role at a foreign government as defined

9   by the statute would not be required to register.  This is, to

10  our knowledge, the first time the government has alleged that

11  there's a violation of 951 for someone who clearly is working

12  as an official of a foreign government.

13         THE COURT:  Let's assume for the moment -- and, again,

14  this is just assumption because of what I said at the outset.

15  Let's assume that -- is this a loophole in which foreign

16  governments could send thousands of people who are -- I'm just

17  using the word for purposes of discussion -- spies to the

18  United States, and they wouldn't have to register, is that --

19         MR. HERSHMAN:  Well, it's an interesting point, your

20  Honor, because that's exactly the point that the United States

21  Congress made when the Department of Justice presented this

22  exception to them as part of the amendment to 951.  And, in

23  fact, the U.S. Senate asked the Department of Justice, Hey,

24  wait a second.  Isn't this a way in which foreign countries, in

25  particular communist bloc countries at the time --

F7TVBURA

1          THE COURT:  Or anybody.

2          MR. HERSHMAN:  -- or anybody would send covert

3    operatives into the United States and why do you want to

4    exclude them from the registration, to which the U.S.

5    Government responded, We know, we get it, and, yes, we want to

6    exclude them.  So it was intentional.

7          THE COURT:  Your response today, putting aside what

8    they said in their legislative debate, what's your response to

9    my question?

10         MR. HERSHMAN:  I don't believe it's a loophole at all,

11   your Honor.  I believe it was intentional in a way to manage

12   the registration and basically suggest that if you're here and

13   we know that you're here working as a representative of the

14   foreign government as we defined it in 951, you needn't

15   register under this section; it is not a crime for you to not

16   have registered.  Clearly, Mr. Buryakov was working for a

17   foreign government as defined by the government in Section 951,

18   under 73.1, and he did not need to register.

19         It is not a loophole; it's the law.  And we think that

20   the law here, which the government ignores entirely in their

21   papers, is clear and controlling.

22         THE COURT:  It's not a loophole, but you're saying

23   it's a vehicle for foreign governments to send in covert

24   operatives legally into the United States.  Is that the

25   conclusion?

F7TVBURA

1            MR. HERSHMAN:  I'm not suggesting something to foreign

2    governments that they can now employ as a means of sending in

3    foreign operatives.  What I'm suggesting is that this exact

4    issue was raised.

5            THE COURT:  That's the implication though.

6            MR. HERSHMAN:  And the implication was actually

7    raised.

8            THE COURT:  And that's how you're trying to include

9    Mr. Buryakov in that.  I'm not saying he's guilty of any

10   infraction whatsoever; but, conceptually, is that a vehicle for

11   sending in covert operatives legally into the United States, in

12   your opinion?

13           MR. HERSHMAN:  In my view, your Honor, it is a

14   regulation that exempts from registering foreign officials who

15   are working for a foreign government as defined by the statute

16   who entered the United States legally.

17           Let me just refer your Honor to page 7 of our

18   memorandum of law where we quote Senator Denton.

19           THE COURT:  No, no, I'm familiar with that.  But if

20   you'd like, you can quote it now.

21           MR. HERSHMAN:  Thank you, your Honor.

22           Senator Denton asked the Department of Justice at the

23   time of the amendment to this particular statute in 1984 that

24   included this exception, and I'll quote:  Some have suggested

25   that diplomates, foreign government officials, and print and

F7TVBURA

```
1    broadcast media personnel be exempted from 1959, that's the

2    predecessor to 951's coverage.  However, aren't these the

3    positions that are most usually used by communist bloc

4    countries as cover for their intelligence agents.

5              THE COURT:  Good question.

6              MR. HERSHMAN:  It was a good question.

7              The issue was raised to the Department of Justice in

8    1984 at the time, and the Department of Justice supported the

9    implementation of this exemption and answered the question that

10   they understand it and said yes, and we support this particular

11   amendment.

12             The issue was not to have foreign government make

13   registration harder for U.S. people abroad.

14             THE COURT:  I'm sorry, the issue was not what?

15             MR. HERSHMAN:  To have foreign governments make

16   registration more difficult for U.S. people abroad.  And so

17   there's reciprocity kind of working here.  Everything that we

18   do is mirror-imaged on the other side, and this was part of

19   what was discussed at the hearing in 1984, when this particular

20   exception was created, and it was created knowing that this was

21   a potential, that there could be people coming under cover of

22   working for another foreign --

23             THE COURT:  Spies.

24             MR. HERSHMAN:  -- for a foreign government, and they

25   may not be who they say, as Senator Denton pointed out.
```

F7TVBURA

1              You don't believe, by the way, that's Mr. Buryakov.

2              THE COURT:  No, no, of course.  That was my original

3       point.

4              But you happen to know, just as a matter of curiosity,

5       whether Russia has a reciprocal provision that we could send

6       people to Russia and spy for the United States under a

7       similar -- you're not calling it a loophole, but under a

8       similar provision?

9              MR. HERSHMAN:  I don't, your Honor.  But I seem to

10      recall -- and, again, I want to check this, so I'm suggesting I

11      need to check this, but I seem to recall that there was some

12      congressional testimony regarding the reciprocity, if you will,

13      use of this kind of mechanism.  I will check that and report

14      back to you.  I don't want to be quoted as misrepresenting

15      that.

16             THE COURT:  Fair enough.

17             It might be an older time period that may not be

18      current today.

19             MR. HERSHMAN:  Correct.  Exactly.

20             But at least at the time of the enactment of the

21      exception, which the government was okay with because they knew

22      that these people were all here.  And that's the point, right,

23      is that when Mr. Buryakov was sponsored to come to the United

24      States by VEB, a part of the foreign government of the Russian

25      Federation under the definition here, there was no hiding that

F7TVBURA

1    he was coming here to engage in as an agent of VEB.  He's not

2    shy of saying that, and he --

3              THE COURT:  There was no hiding that he was here to be

4    the deputy for the bank.

5              MR. HERSHMAN:  Correct.  That's exactly right.

6              THE COURT:  He didn't say that he was coming to do

7    anything unlawful on behalf of the Russian Federation.

8              MR. HERSHMAN:  We would argue that he hasn't.

9              THE COURT:  Of course.

10             MR. HERSHMAN:  In all events, your Honor, that's not

11   what the statute requires, right.  Once the government is on

12   notice that you're here, that's all that's required, and you

13   are not required to register.

14             So the plain language is clear in the statute.  The

15   legislative history is clear, your Honor.  And there's no

16   question that the defendant here is an agent of the Russian

17   government through his role at VEB.  He wasn't shy about it --

18             THE COURT:  There's a question.  There's no question

19   in your mind.

20             MR. HERSHMAN:  Yes.

21             THE COURT:  They have challenged that.

22             MR. HERSHMAN:  They have, but not by applying the

23   actual statute.  They've applied some completely different

24   analysis which has no relevance to the issue before the Court.

25             He worked for a state-owned bank; he was officially

F7TVBURA

1   and publicly acknowledged and sponsored by a foreign

2   government; his status was known, and his visit authorized by

3   the Department of Homeland Security.  There was no question

4   about that.  He falls squarely into the exception of (d)(2) in

5   Section 951.

6          Your Honor asked a question about 951(d) and our

7   argument about the government's failure to plead the exception

8   in the indictment.  And, yes, your Honor, with respect to that

9   aspect of our motion, it is fatal to the indictment.

10          Where an exception is incorporated in the enacting

11   clause of a statute, the burden is on the prosecution to plead

12   and prove that the defendant is not within the exception.  We

13   cited a Supreme Court case for that direct proposition, the

14   *Vuitch* case.  I probably mispronounced it, but --

15          THE COURT:  If you could spell that.

16          MR. HERSHMAN:  V-U-I-T-C-H.

17          Actually, maybe I got it right, I don't know.

18          But 951(d) expressly creates an exception that is

19   incorporated in the enacting clause of 951(a), through the

20   definition of the term "agent of a foreign government."  And it

21   was therefore fatal for the government to not plead that

22   exception.

23          THE COURT:  Not to plead it.

24          MR. HERSHMAN:  Correct.

25          THE COURT:  But if they did, that argument, I suppose,

F7TVBURA

 1    would be moot.

 2            MR. HERSHMAN:  We would not have made the argument if

 3    they did, your Honor.  But I don't think that they can, because

 4    if they adhere to the definitions in the statute and

 5    regulations, it's impossible for them to plead that exception,

 6    because it applies to Mr. Buryakov, and it applies as a matter

 7    of law.  This is not a factual issue; this is an issue of law.

 8    The definition is contained --

 9            THE COURT:  Of course they argue it in their papers.

10            MR. HERSHMAN:  They do, but, again, they ignore the

11    law.  And our point is that if they follow the law, which is

12    the definition of foreign government --

13            THE COURT:  I get that.  But they have made the point

14    in their motion papers, although they haven't pled the

15    exception, as it were, in the indictment.  That's true, right?

16            MR. HERSHMAN:  They make the argument that they don't

17    need to plead the exception, and they cite a case for pleading

18    affirmative defenses, which is entirely different than what is

19    here.  This is not an affirmative defense.  This is part of the

20    enacting clause.

21            THE COURT:  They cited a 1922 case from the Supreme

22    Court.

23            MR. HERSHMAN:  The more recent case they cite, I

24    think, was an affirmative defense case which they rely on.  And

25    that is not the issue here.  This is an enacting clause of a

F7TVBURA

1    statute.

2            THE COURT:  The 1922 case, though, is not an

3    affirmative defense case; isn't that right?

4            MR. HERSHMAN:  I don't believe so.  But the more

5    recent case they cite is.  And our case is a 1971 case, which

6    is directly on point, we believe.

7            So, your Honor, I want to be mindful of the time

8    limitation that you set, and I appreciate it.

9            THE COURT:  I asked a whole bunch of questions, so if

10    you have a couple more points you want to make --

11            MR. HERSHMAN:  That's okay, your Honor.

12            What I'd like to do is just briefly address the bill

13    of particulars issue and then I'll sit down.

14            I think I've made my points on the 951.  And again,

15    I'm happy to answer any additional questions on that point.

16            With respect to the bill of particulars, your Honor,

17    this is going to be a combined bill of particulars argument and

18    just updating the Court on the status of the discovery issues

19    because they are related.

20            Mr. Buryakov is in custody clearly.  And even if he is

21    convicted after trial, which we doubt, any sentence might well

22    not be very long, depending on what the guidelines and the

23    Court chooses to apply here.  Without some more specification

24    by the government of the relevant discovery, it will likely

25    take a very, very long time for us to prepare this case for

F7TVBURA

 1   trial because we will need to review everything.

 2           And now I want to put this in context.  The volume of

 3   data is humongous.  There's 5,000 hours of video, over two

 4   and-a-half years.  I would venture to say, your Honor -- and

 5   I'm not exaggerating -- that virtually all of it is irrelevant.

 6   There's 1500 hours of wiretaps.  I'd venture to say that of

 7   those wiretaps, virtually all of them are irrelevant.  There's

 8   15 terabytes of data.

 9           The data includes everything that was seized by the

10   government from Mr. Buryakov's office and his home and his

11   person at the time of his arrest and the execution of the

12   search warrants.  That includes -- and I've seen these, so I

13   can attest to it -- video of his family's birthday parties,

14   pictures of his family, shopping lists, etc., etc., etc.  It's

15   virtually all irrelevant.

16           We do not have a particular way, from what was turned

17   over to us, of identifying specifically what the government

18   intends to rely on and what they actually claim proves their

19   case.

20           THE COURT:  So I got that point from the papers.

21           Have you had the opportunity with Mr. Fee to meet and

22   confer about these issues?

23           MR. HERSHMAN:  Yes.

24           THE COURT:  Have you made any more progress than

25   what's reflected in the papers?

F7TVBURA

 1             MR. HERSHMAN:  Not exactly, your Honor, and with

 2     credit to Mr. Fee and the government, okay, because our

 3     conversations have been productive and helpful.

 4             Mr. Buryakov still does not have access to the video

 5     that we brought to your attention quite a long time ago.  The

 6     government has delivered the video, as I understand it, to the

 7     MCC, but it hasn't worked.  Mr. Buryakov simply does not have

 8     access to it and still doesn't.

 9             THE COURT:  You mean the technology there hasn't

10     worked?

11             MR. HERSHMAN:  That's right.

12             Second, I am unable to review any of this material

13     directly with Mr. Buryakov because I can't bring it into the

14     MCC in a form that is usable.  So I can bring a CD into the

15     MCC, but I can't take 5,000 hours of video and dummy it down to

16     a CD.  It would take a building full of CDs in order for that

17     to happen.  It's impossible.  I have been discussing this with

18     Mr. Fee.  We've been discussing possible alternatives.

19             In fairness, your Honor, it's kind of the same issue

20     and, at the same time, a separate issue.  One is do I really

21     need to review 5,000 hours of videotape.

22             THE COURT:  Right.  I get it.

23             MR. HERSHMAN:  And the second is how am I going to

24     review this material with Mr. Buryakov in a way that allows us

25     adequately to prepare a defense in this case.

F7TVBURA

1          THE COURT:  So it's that discussion I'm wondering if

2     you -- are you still talking about that?

3          MR. HERSHMAN:  We are.  We are, but we may need the

4     Court's intervention.

5          THE COURT:  I see.

6          MR. HERSHMAN:  There's one suggestion that we bring

7     Mr. Buryakov to a proffer room at the courthouse.  The problem

8     with that is that a U.S. Marshal would need to be present in

9     the room.  That's not particularly acceptable to us.  We can't

10    have private, frank conversations with our client.

11         THE COURT:  What's the technology problem at the MCC?

12         MR. HERSHMAN:  The data is on five or six hard drives,

13    and we're not permitted to bring any mechanism into the prison

14    itself except for a CD.

15         THE COURT:  Except for?

16         MR. HERSHMAN:  CD.  And the data is too dense to be

17    transferred to a CD.  It's even too dense to be transferred to

18    a DVR; it's on hard drives, and it's huge.

19         The second problem is that the computers that are in

20    the lawyer rooms at the MCC are antiquated and, we think, not

21    up to current technology specs.  So they are not able to read

22    the information, even if it's there, hence the problem that

23    Mr. Buryakov has in not being able to see the video.

24         THE COURT:  No, I get it.  It is somewhat ironic that

25    they have the capability to make the videos and the recordings,

F7TVBURA

```
1    but not the capability to display them.  But that's something
2    else.
3              MR. HERSHMAN:  There's a third problem, which includes
4    the software that was used or is used by the government, I
5    believe it's called NCASE, which is not publicly available and
6    requires us to engage a vendor, which we are in the process of
7    doing, to actually search and view the material.  So all of
8    this is complicated by the fact that we don't even know what we
9    are looking for.
10             So that's my bill of particulars piece.
11             THE COURT:  Okay.
12             MR. HERSHMAN:  Thank you very much, your Honor.
13             THE COURT:  Thank you.
14             Mr. Fee.
15             MR. FEE:  Yes, your Honor.
16             THE COURT:  Could you just, since my curiosity is so
17   aroused -- so this issue about pleading the exception, are you
18   stymied in doing that or is that something you might do or
19   could do?
20             MR. FEE:  Your Honor, we could obviously quickly fix
21   that.  Our position is that there is no fix required.  We cite
22   Second Circuit and Supreme Court law that you don't need to
23   specifically negate every exception to a statute.  There are
24   obviously other statutes.
25             THE COURT:  I got the legal argument; I'm just
```

F7TVBURA

1    thinking about the practical one would moot a whole part of the

2    defense, as Mr. Hershman has indicated.

3              MR. FEE:  It would certainly moot it, your Honor.

4              I would also point out just for the Court's

5    edification that in the indictment, there is a clause -- and

6    it's in paragraph 6 with respect to Count One, it's also in

7    Count Two -- where we allege that Mr. Buryakov worked as an

8    agent of the SVR, we say:  Without prior notification to the

9    attorney general, as required by law.

10             Your Honor, we would submit that even to the extent

11   that it was required to somehow plead that the exceptions did

12   not apply, that, at least indirectly, doesn't.  The allegation

13   is he was required to register and did not.

14             THE COURT:  No, no, not to belabor the point, but you

15   certainly argue in your papers that he's not covered by the

16   exception, right?  So I'm just wondering if this is an easy

17   cure -- not a cure, if it's something you contemplate doing.

18             Mr. Hershman says you can't do it, as a legal matter.

19   But you do do it in your submissions, that is to say, make

20   those arguments.

21             Is there anything stopping you from doing it in an

22   indictment, in a superseding indictment, for example?

23             MR. FEE:  No, your Honor, there's nothing stopping us

24   from that.  We could do so quickly.

25             As to the legal points or the arguments made by

F7TVBURA

1    Mr. Hershman, I'll just pick up on the question the Court

2    asked, specifically the contention that the defendant makes

3    that there are potentially thousands of individuals like the

4    defendant in the United States.  So that is true in one

5    respect, but I think this point does highlight really the

6    absurd reading, the strained reading that the defendant has

7    urged upon this Court.  It would eviscerate Section 951.  There

8    are -- I don't know if it's thousands -- many people employed

9    by state-run corporations.

10            THE COURT:  Not just the VEB Bank, right?

11            MR. FEE:  Not just VEB Bank.  Other state-owned

12   corporations that are owned by the Russian Federation, as well

13   as other countries, friend and foe.

14            THE COURT:  There probably are thousands altogether.

15            MR. FEE:  It certainly could be thousands, maybe even

16   tens of thousands here in the United States.

17            Important point:  VEB, as I imagine many of those

18   other corporations, is a freestanding company under Russian

19   law.  It is not an arm or an agency of the Russian Federation.

20   Your Honor, that was and, I believe, is the position of

21   Mr. Buryakov.  He urged that exact position upon this Court.

22   In fact, those are his words:  VEB is a freestanding company

23   under Russian law; it is not an arm or agency of the Russian

24   government, but has a separate and independent corporate

25   existence that is well-recognized under U.S. law.

F7TVBURA

```
1              THE COURT:  He did that back in May, not, it should be

2      clear, in arguing this motion.  At the time he was arguing

3      about who was paying for his counsel.  And it's in that

4      context -- I'm just setting the --

5              MR. FEE:  Correct, your Honor.

6              THE COURT:  It is in that context that he or counsel

7      made these comments which seemed to contradict -- I think it's

8      fair to say they are at odds somewhat with the contentions that

9      are made in the course of the motion to dismiss.

10             MR. FEE:  That is the context, your Honor.  And

11     lawyers make arguments, but those are facts.  And when

12     Mr. Buryakov's counsel stated those facts, the U.S. Government

13     did not dispute them because they are true.

14             I would urge the Court -- I know it is doing so --

15     when you listen to Mr. Hershman's arguments, please look at the

16     actual text of the statutes, the regulations, and the things

17     attached to his own motion, to Mr. Buryakov's own motion,

18     including the enacting law under Russian law that created VEB.

19     We highlight this in the brief; I won't detail it here.  I

20     would note the broad point that statute uses the Russian

21     Federation and VEB separately.  It says, the Russian Federation

22     cannot interfere with VEB.  The liabilities of the Russian

23     Federation are not the liabilities of VEB.

24             THE COURT:  And vice-versa.

25             MR. FEE:  And vice-versa.
```

F7TVBURA

1           Mr. Buryakov and the bank branch of New York confirmed

2      this fact, that they are distinct.  They confirmed it in their

3      actions.  Mr. Buryakov held himself out from the time he

4      entered the United States, as the Court observed, as

5      Mr. Hershman said, as an employee of the bank, as a banker.  He

6      stated it over and over on his visa applications for a work

7      visa, an L-1 work visa, as they call it.  He obtained a visa

8      for an intracompany transfer, from one branch of the bank to

9      another.  The bank itself, the New York branch which applied

10     for his visa, signed by the deputy representative of the bank

11     in New York, stated over and over and over and over again this

12     man's business was to be a banker engaged in international

13     banking in New York for the bank.

14           Your Honor, it is a very important point.  Your Honor

15     asked it.  At no point did Mr. Buryakov ever identify himself

16     as an official representative of the Russian Federation, of the

17     foreign government, the word used in Section 951.  This is not

18     complicated.  Mr. Hershman has urged upon this Court some ad

19     hoc, frankly, strained readings.

20           The Court asked Mr. Hershman to point out where he

21     drew this distinction from, under his reading of the statute,

22     that supervisors somehow were exempt, but janitors weren't.

23     Your Honor, I think it was clear he could not point out where

24     he drew that distinction from.  He was making arguments based

25     off of the structure of the statute, but there was no such

F7TVBURA

distinction drawn.

          I think another thing that highlights --

          THE COURT:  You're saying there was no specific

distinction between supervisors, whoever that might be, and

anybody else.

          MR. FEE:  There's not even a whiff of a distinction

because it's not there.

          I think another point to highlight, legislative

history, as they've called it, and I think this is even on the

edges of whatever that may be, has become front and center in

their argument.

          I would urge the Court -- and I know it has -- to read

exactly what Mr. Hershman pointed to.  It's a statement by a

government official talking about diplomatic privileges and

immunities, help U.S. diplomates abroad, so we don't want to

exclude those or make those people register in the U.S.

          It is not about the exception at issue here, your

Honor.  It is not even close to being about the exception.  951

has an exception for diplomates; that is not what Mr. Buryakov

is arguing applies to him.  He's arguing something applies to

him which frankly is not even close to applying.

          I would just focus, to move away from the point, I

will briefly touch on another portion of the phrase "officially

and publicly acknowledged and sponsored official or

representative of a foreign government."

F7TVBURA

1          Addressed the foreign government point, your Honor,

2     frankly, I don't think it's close to say he was here on behalf

3     of that.  Officially and publicly acknowledged and sponsored,

4     whatever that may mean, it does not apply to Mr. Buryakov.

5          There were essentially two core deceptions, as alleged

6     in the indictment, which are presumed to be true at this stage,

7     two core deceptions that explain how this defendant came to New

8     York and engaged in work on behalf of the Russian spy organ.

9          First is that he was a banker, as he stated over and

10    over in applying for an L-1 visa.  I would just note, your

11    Honor, that the L-1 visa, the forms attached to this

12    defendant's motion, explains the purpose of an L-1 visa.  It's

13    in the papers.  It says it's for foreign companies doing

14    business in the U.S.  We've outlined some other language in

15    that visa and the applications themselves that make clear it

16    did not confer any status.

17         He held himself out only as a banker for VEB.  That's

18    the first exception.  The second is he stated repeatedly, under

19    penalty of perjury, that he was not entering to try to engage

20    in espionage.  The government would submit those were both

21    lies.  That is not officially and publicly acknowledging

22    oneself as an official of a foreign government, the Russian

23    Federation.  It is the opposite.  It's a banker getting a work

24    visa applied for on behalf of his bank to come here and be a

25    banker and to not even do that, your Honor.

F7TVBURA

1           The final point I would make just on -- this again

2    relates back to the point about who else would be covered, the

3    loophole that could be created.

4           THE COURT:  Before you do, you have some allegations,

5    both, I think, in the indictment and certainly in the papers

6    that suggest that Mr. Buryakov -- and I don't know if they are

7    called codefendants, they are the government officials who were

8    apparently not in the country anymore.  I don't know if

9    "codefendant" is the right terminology.

10          But, in any event, they were, according to you, agents

11   of the foreign government engaged in espionage or related

12   activities.  You allege or state that there are conversations

13   among them to which the objective was to obscure the fact that

14   Mr. Buryakov was undertaking actions that were not for his

15   employer in particular, right?

16          MR. FEE:  Correct, your Honor.

17          THE COURT:  They were totally separate and distinct

18   from any actions he might take as a banker.

19          Is that a fair statement?

20          MR. FEE:  That is a completely fair statement.  And

21   those two men were charged in the same indictment; they are

22   obviously not here.  They, unlike Mr. Buryakov, had official

23   cover; they were diplomates and consular officials for the

24   Russian Federation.

25          To pivot off that point, your Honor, there are other

F7TVBURA

1    allegations in the complaint, of which the Court can certainly

2    take notice of here, that make the same point.

3              The information Mr. Buryakov was obtaining as a spy

4    was not being funneled to his superiors at the bank in New

5    York; it was being funneled to a trade official, an attaché to

6    the Russian ministry.  Other spies with whom he had no other

7    reason to be channeling this information.  And we go into,

8    frankly, great detail in the complaint.

9              One final point, your Honor.

10             The reading of the government would not result in

11   this, essentially, rendering Section 951 a dead letter.  People

12   like Mr. Buryakov who are here on behalf of, to use his own

13   words, his counsel's words, freestanding companies, would not

14   be covered by what we've called a sponsored official exemption

15   because they are not officials of a foreign government; they

16   work for a corporation.

17             Your Honor, they would -- although it is not an issue

18   before the Court -- be covered by a different exemption, the

19   legal commercial transaction exemption, Section (d)(4).  And it

20   is significant that it's not even argued here that it could

21   apply to the defendant, because it wasn't, there is nothing

22   legal about what he was actually doing.

23             Your Honor, unless there's any other questions on the

24   statute point, I'll move on to the bill of particulars.

25             We obviously argued the vagueness point in our papers.

F7TVBURA

1          THE COURT:  My question to you is the same one as to

2     Mr. Hershman on bill of particulars.  Do you have any plans

3     afoot to talk to him and solve some of these essentially

4     discovery problems or difficulties that he's having?

5          MR. FEE:  Absolutely, your Honor.  There's sort of a

6     process point, and then there's, I guess, a substance point.

7          The process point, Mr. Hershman raised with me

8     yesterday, this issue he's having, that he cannot bring in

9     anything other than disks, the government's interests are the

10     same as his.  We want him to have every opportunity to review

11     the discovery himself and certainly with his client.  We have

12     reached out to legal counsel at the MCC.  I am discussing with

13     colleagues in my office some creative interpretations, creative

14     solutions, including -- I don't know if we can do this yet --

15     finding a clean way to get in all the discovery, say, on a

16     clean laptop that is routed through MCC Legal rather than

17     carried in by counsel.  We will work as quickly as we can and

18     we'll report to the Court and, of course, keep talking to

19     Mr. Hershman.

20          He characterized accurately the other process point,

21     which is the technical issues we've been having at the MCC with

22     getting the surveillance footage just to work.  We are now

23     converting it into another format, and we will update

24     Mr. Hershman and the Court and try to do that as quickly as

25     possible.

F7TVBURA

1      As far as the substantive requests underlying the bill

2  of particulars, Mr. Hershman couched his argument in really

3  broad terms, your Honor.  I would just point the Court to pages

4  22 and 23 of Mr. Buryakov's opening brief which outlines the

5  specific requests that were made to the government and which he

6  now makes as part of his motion.

7      Your Honor, first, frankly, the complaint and the

8  discovery in this case are exceedingly detailed, especially the

9  complaint.  I know your Honor has read it.  It does exactly

10  what Mr. Hershman argued did not happen here; it outlines what

11  the evidence is, dates and times of meetings, the substance of

12  conversations, the identities of the people involved in the

13  meetings.  And to highlight the fact that, frankly, I think

14  most of the information they are saying they don't have, they

15  already have.

16      THE COURT:  Well, there's two categories.  One is can

17  you help him simplify his search or his review of the materials

18  that you have provided.  He's saying there are hundreds or

19  thousands of hours that are not relevant.  One question he's

20  asking is can you help him pinpoint where to find the relevant

21  information.  That's one.

22      Two is he may be asking you for additional -- he is,

23  in fact -- information in some regards.

24      My point is that most often, cases that I've presided

25  over, counsel, working together, meeting and conferring,

F7TVBURA

1    usually can eliminate many of these problems that seem still to

2    exist in terms of the papers, the motion and opposition.

3              MR. FEE:  Of course, your Honor, that is always the

4    best solution; and, yes, we will continue to do that.  If there

5    are any additional requests, we will address them and try to

6    help in the best way we can.

7              Our motion related to these six numbered requests,

8    just to point out that each of these requests actually is

9    phrased as the following:  We want this information, excluding

10   the meetings or items referred to in the complaint paragraphs,

11   and then it names five or six paragraphs.  Each request has an

12   exclusion.

13             Frankly, your Honor, that is a lot of detail already

14   in the defendant's possession.  The government has attempted to

15   address more specific concerns.  I know the Court has seen this

16   in the papers; we provided a letter.  You hear a lot of

17   references to all the surveillance footage.  We are doing our

18   best to narrow that.  We know it's a lot.  We've provided

19   detail.  When we find more meetings on that surveillance

20   footage, we will give another list.  So we want to make this

21   review as easy as we can for the defense.

22             THE COURT:  Okay.

23             MR. FEE:  Unless there's anything further, your

24   Honor --

25             THE COURT:  The last question, not to beat a dead

F7TVBURA

1    horse, but is there any plan afoot to amend or supersede to

2    plead, as he says is legally required, the exclusions or the

3    exemptions?

4              MR. FEE:  Your Honor, our position is it's not legally

5    required.  Quite frankly, it would be a fairly meaningful

6    change in pleading practice not only in this district.  It is

7    not the normal course, to use the language of the courts, to

8    negative every exception in a statute.  Absent an order from

9    the Court, doing so or, frankly, some compelling precedent

10   cited for us, we don't have any plan.  But of course your Honor

11   is correct that we can quickly -- if this is the right

12   phrase -- fix that in the event the Court deems it necessary.

13             THE COURT:  Okay.

14             MR. FEE:  Thank you, your Honor.

15             MR. HERSHMAN:  Briefly, your Honor.

16             THE COURT:  Yes.

17             MR. HERSHMAN:  It seems, based on Mr. Fee's argument,

18   that the Department of Justice is looking now to rewrite the

19   regulation that controls the application of 951 and, again,

20   ignores 73.1, which specifically defines foreign government as

21   I discussed earlier.

22             What's interesting is the issue was actually raised

23   prior to the enactment of the regulations in the statute by the

24   Senate and discussed by the DOJ.

25             THE COURT:  This is 1984?

F7TVBURA

1          MR. HERSHMAN:  Yes.

2          There's another quote that I want to give which kind

3     of puts what Mr. Fee is suggesting the Court do here, which is

4     essentially rewrite 73.1 in the regulations in this case.

5          The government, the Department of Justice, stated in

6     enacting the amendments to 951(d) and the exception at issue

7     here:  "Even extensive communist bloc use of diplomatic media

8     or other covers for their intelligence operatives does not, in

9     our opinion, destroy the utility or desirability of exempting

10    such categories of personnel from the provisions of this

11    statute."

12         That's the position of the Department of Justice.  It

13    can't be rewritten for this case in this courthouse.

14         Second, I referred earlier to a recollection --

15         THE COURT:  That assumes that I --

16         MR. HERSHMAN:  Yeah.  And I apologize.  But Mr. Fee

17    would urge the Court to do that.

18         I mentioned, your Honor, that I had some recollection

19    about a reciprocity statement made in connection with the

20    enactment of the amendments to -- well, actually, it goes back

21    earlier in the enactment of the bill, 1981.  There is a quote

22    from the Department of Justice in which -- and it follows the

23    quote I just read about the question raised about using cover

24    and wouldn't this be a loophole, as your Honor referred to it.

25    The government responded.

F7TVBURA

1          One part of the response was as follows --

2          THE COURT:  This is response by whom?

3          MR. HERSHMAN:  The Department of Justice.  This is in

4     connection with the 1984 amendments in response to Senator

5     Denton's questions.  It's not quoted in our papers, but it's

6     part of the official record of the congressional hearing on

7     this amendment.

8          The Department of Justice said:  "Finally, under the

9     principle of reciprocity, new restrictions simply invite

10    retaliation; and the president favors expanding, not

11    contracting, the contest of ideas with the Soviets."

12          So my recollection was to that point, your Honor.  So

13    that addresses the reciprocity aspect.

14          THE COURT:  This from me is just *dicta*.

15          MR. HERSHMAN:  I wanted to just complete the record.

16          THE COURT:  No, no, no, no, I mean what I'm about to

17    say.

18          MR. HERSHMAN:  Oh.

19          THE COURT:  It's probably fair to say that people said

20    a lot of things in the '80s that might not be said today, just

21    generally speaking.  I'm not saying that literally applies to

22    what you just said.

23          MR. HERSHMAN:  I appreciate that, your Honor.  The

24    Department of Justice has had opportunity to change the statute

25    or seek to change the statute, and they haven't done, so other

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F7TVBURA

1    than through Mr. Fee.

2         I want to point out also in connection with the

3    suggestion that there was no openly-acknowledged role here with

4    respect to Mr. Buryakov and what VEB actually is in terms of

5    its application, its statement to the United States, in

6    connection with Mr. Buryakov's application through VEB to come

7    to the United States back in 2010.  VEB wrote a letter to the

8    Department of Homeland Security in which it described the bank

9    for development of foreign economic affairs, VEB, by saying

10   that VEB of the U.S.S.R. was originally established in 1924 as

11   the Soviet Union's bank for foreign trade.  The bank's role is

12   as an agent of the Russian government in international trade

13   and economic development.

14        According to the Russian legislation, VEB is a

15   specialized state bank of Russia and is entrusted with

16   providing external debt servicing, as well as the centralized

17   foreign economic operations for Russia.  Worldwide, VEB

18   currently employs 1200 people and achieved, and it goes on to

19   describe.

20        This was in the sponsoring petition to the United

21   States Government for approval to issue a visa for Mr. Buryakov

22   to come to the United States as the deputy representative in

23   the United States for VEB.  This is officially and publicly

24   acknowledged in plain words.  The United States Government was

25   clearly on notice of the role of VEB.  It confirmed the role of

F7TVBURA

1    VEB most recently in imposing sectoral sanctions against it.

2    In stating what it is to the United States Government, it is

3    directly at odds with what Mr. Fee is arguing.

4            THE COURT:  Now, he has also said that comments that

5    the defense has made in this case back in May seem to be

6    antithetical to the points you are making now.  The defense

7    seemed to be more willing and interested in drawing a

8    distinction between the Russian Federation and VEB in saying

9    that they were separate rather than one and the same, which is

10   a thrust of the motion.

11           MR. HERSHMAN:  As your Honor pointed out, in

12   connection with the *Curcio* proceedings, for a totally different

13   purpose, in responding to your Honor's question about payment

14   of fees, we pointed out that VEB is a separate state-owned --

15           THE COURT:  I'm not taking any responsibility for the

16   answer.  I may have raised the question in the context of

17   *Curcio*, but I didn't give the answer.  The answer does seem to

18   be somewhat at odds with the argument that you --

19           MR. HERSHMAN:  I apologize for any confusion for my

20   answer, your Honor, but intended, as part of that answer, was

21   to address your Honor's question concerning the payment of fees

22   and the separateness of VEB.  But what is important about

23   that --

24           THE COURT:  Wait.  But so that's his point.

25           MR. HERSHMAN:  Yes.  And I'm going to address the

F7TVBURA

1     point.

2              THE COURT:  That's his point, is that you -- in that

3     context, in this case, you did say that VEB and the Russian

4     Federation were entirely distinct.

5              MR. HERSHMAN:  For purposes of the payment of fees, I

6     pointed out that VEB is a separate state-owned corporation, and

7     that's the point that I made.

8              What controls here and what is relevant is under the

9     CFR and under 951, whether it's a separate state-owned entity

10    or not is not part of the definition of foreign government and

11    not controlling with respect to the application of 951.

12             THE COURT:  I thought you said at that time that VEB

13    is a freestanding company under Russian law; it is not an arm

14    or agency of the Russian government, but has a separate and

15    independent corporate existence that is well-recognized under

16    U.S. law.

17             MR. HERSHMAN:  Yes.

18             THE COURT:  I think you said that on May 14th.

19             MR. HERSHMAN:  Yes.  And that is correct.

20             As it concerns your Honor's question at the time,

21    which related to the payment of fees only, your Honor directed

22    me to address that question in my letter, which is what we did.

23    But you did not direct us to address what is VEB as it's

24    defined under Section 73.1 or with respect to 951.  The fact

25    that it is a freestanding company under Russian law is

F7TVBURA

1    irrelevant to --

2              THE COURT:  Is irrelevant or --

3              MR. HERSHMAN:  Is not relevant to the determination

4    the Court needs to make that pursuant to 73.1 and 951 as

5    written in the statute and regulations, VEB is a foreign

6    government.

7              THE COURT:  I don't understand how it could be

8    irrelevant.  It's quite the opposite of what you're contending

9    in the motion, it seems to me.

10             MR. HERSHMAN:  No, no.  My letter isn't the statute,

11   your Honor.  What I'm referring the Court to is two different

12   issues.  There was an issue concerning instrumentality and

13   payment of fees that your Honor raised in the *Curcio* hearing.

14   The statement that I made is true.

15             THE COURT:  Candidly, I think there's more overlap

16   than distinction.  In both context, both in the *Curcio* context

17   and now, you were all talking about the relationship between

18   the VEB Bank and the Russian Federation.  So that's the same

19   issue here.  It may have different legal consequences.  One is

20   who's paying the legal fees, and another is the applicability

21   of 951.

22             But it's a factual question, and I don't think the

23   facts change between May and today.  I do think that there

24   is -- "contradiction" may be too strong a term, but what was

25   said is what was said.

F7TVBURA

1          As I said before, I'm not taking responsibility for

2     the answers; I just ask the question in the context of the

3     *Curcio* hearing.  The answer then appears to be different than

4     the answer you're putting forward today.  Factual matters, not

5     legal interpretations.

6          MR. HERSHMAN:  With all due respect, your Honor, I

7     think perhaps if there was a poor choice of words in respect to

8     the *Curcio* hearing, which didn't contemplate the current issue

9     or address the current issue, then for that I apologize.

10          THE COURT:  That I think is so.  It wasn't on

11     anybody's radar --

12          MR. HERSHMAN:  Exactly.

13          THE COURT:  -- perhaps at the time, but --

14          MR. HERSHMAN:  Exactly.

15          THE COURT:  I'm not responsible for radar.

16          MR. HERSHMAN:  Exactly.

17          But your Honor asked a specific question, which we

18     answered accurately.  Sovereign authority is what is relevant

19     here.  In terms of making a determination as to whether VEB is

20     a foreign government is encompassed in the definition of

21     foreign government under the relevant statute, that is what is

22     at issue, sovereign authority, and clearly VEB has that.

23          For purposes of this analysis, what the government is

24     urging is that you ignore the regulations in the statute.  You

25     can't simply ignore the regulations in the statute, and they

F7TVBURA

1    can't get around -- and Mr. Fee did not suggest any way

2    around -- the fitting of VEB clearly into the definition of

3    foreign government in the regulation.  It's interesting that he

4    continues to avoid explaining how it's not sovereign authority

5    and it hasn't been delegated sovereign authority to perform

6    quintessential government functions.  As far as the United

7    States Government was concerned, they were on notice that

8    that's exactly what VEB was doing, and that's why Mr. Buryakov

9    was being sent here.

10          THE COURT:  What is the answer to the question?  Is

11   Mr. Buryakov an employee of VEB Bank and/or is he an employee

12   of the Russian Federation?

13          MR. HERSHMAN:  He is a representative, deputy

14   representative, of VEB Bank.  VEB Bank is encompassed in the

15   definition of foreign government under the regulations.  As

16   such, 951(d)(2) applies directly to him.

17          THE COURT:  I get that.  I'm just asking a more

18   simple, direct question.  Is he an employee of the Russian

19   Federation?

20          MR. HERSHMAN:  He is an employee of VEB Bank.  He is a

21   representative official of VEB Bank.  VEB Bank is encompassed

22   in the definition of "foreign government" under the regulation.

23   Therefore, when you look at the exemption section under 951(d),

24   he is exempt from registering.  By virtue of his position at

25   VEB Bank --

F7TVBURA

1          THE COURT:  But is there an answer to my question
2     about whether he's an employee of --
3          MR. HERSHMAN:  He's an official --
4          THE COURT:  Whoa, whoa.  Let me finish the question.
5          Is there an answer to the question about whether he is
6     an employee of the Russian Federation, just yes or no.  There
7     may not.
8          MR. HERSHMAN:  I think it begs the question, your
9     Honor, with all due respect.
10          THE COURT:  I know that.  I'm trying to get you not to
11     beg the question; I'm trying to get you to answer the question.
12          MR. HERSHMAN:  Well, I understand.  But what I'm
13     trying to do is to point your Honor to the actual words of the
14     statute which say --
15          THE COURT:  I get that.  I got that in your papers
16     too.  I'm just trying to figure out --
17          MR. HERSHMAN:  I think that he is a
18     publicly-acknowledged foreign official, and he is not required
19     under the terms of the definition in Section 73.1 and 951(d)(2)
20     to further register.  He was on notice.
21          THE COURT:  I get it.
22          MR. HERSHMAN:  Now with respect to the bill of
23     particulars, just briefly, what Mr. Fee ignored was the
24     specific points that we raise on page 22 and 23.
25          THE COURT:  I don't mean to cut you off, but here's

F7TVBURA

```
 1    procedurally what I'm thinking of doing:  I think we should
 2    resolve the motion to dismiss first.  And if you're successful,
 3    then bill of particulars is moot.  If the government is
 4    successful, then it's not moot.
 5           If it's not moot, I would prefer not to resolve it
 6    today anyway, because that's something that I think I have been
 7    hinting or saying that I expect the lawyers to do more.  It's
 8    not a criticism, but I would expect the lawyers in a
 9    meet-and-confer could take a matter like those presented here
10    further than they are in the papers.  That's not a criticism.
11           So I wouldn't rule, even if I get to it on the bill of
12    particulars, today.
13           Does that work for you?
14           MR. HERSHMAN:  That works for me.
15           THE COURT:  I know you both, and I think you could
16    make more progress, if it came to that, on the bill of
17    particulars without me intervening.
18           MR. HERSHMAN:  Okay.
19           THE COURT:  All right.  Hold on for just a second.
20           (Pause)
21           THE COURT:  So as expected and happened, both your
22    papers, both sides, are excellent and the oral argument was
23    very helpful, as well.
24           It's now 12:20.  If you are available at 2 o'clock, I
25    should be able to have my thoughts together to give you a
```

F7TVBURA

1    ruling at that time.  Does that work for everybody?

2            And can we have the interpreter back at 2, as well?

3            Okay.  Thanks.  I'll see you then.

4            MR. FEE:  Thank you, your Honor.

5            (Recess)

6                    A F T E R N O O N   S E S S I O N

7                         2:05 P.M.

8            THE COURT:  Did we lose Mr. Fee?

9            MS. SKOTKO:  Yes, your Honor.  One standing.

10           THE COURT:  First of all, as I said this morning, the

11   papers were terrific and so is the oral argument.  I'm going to

12   rule on the first part of the motion, on the motion to dismiss,

13   and then we will see where we are with respect to the bill of

14   particulars.

15           This ruling is based on the entire record of the case,

16   even though I may not cite to or mention other aspects of the

17   case.  Certainly without limitation, it includes the complaint

18   in the indictment and also the parties' briefs.  I'll probably

19   mention excerpts from them, but I reviewed them in their

20   entirety, and the entire record, oral argument, court

21   appearances, etc., that have happened in this case are part of

22   this ruling.

23           So essentially in the motion to dismiss the defense

24   argues that the indictment fails to state a criminal offense by

25   Mr. Buryakov as a matter of law in several respects.  One is

F7TVBURA

1    that the indictment fails to negate exceptions found in 18

2    United States Code, Section 951(d).  In another, that

3    Mr. Buryakov is exempt from the statute, exempted from the

4    statute, as he is a foreign official.  And third, in that any

5    ambiguity under Section 951, and also in particular the

6    terminology or the phrase "publicly-acknowledged and sponsored

7    officials" should be construed in favor of the defendant.

8            A second argument presented by the defense under the

9    motion-to-dismiss rubric is that applying Section 951 to

10    Mr. Buryakov would deprive him of fair warning under the due

11    process clause of the Constitution.  And a third branch of the

12    motion to dismiss, related somewhat to the second, is that

13    Section 951 is unconstitutionally vague as applied to

14    Mr. Buryakov.

15            So I'll take each of those in turn.

16            The issue of ambiguity won't be discussed immediately

17    because it's related to two of the other sections, vagueness

18    and due process, etc., but it will be covered.

19            So first as to the issue of failure to negate an

20    exception.

21            Count One of the indictment alleges that Mr. Buryakov

22    engaged in a conspiracy to act as an unregistered agent in the

23    United States; and Count Two alleges that he acted as an

24    unregistered agent in the United States.  I'm not going to read

25    Counts One and Two; as I said before, the entire indictment is

F7TVBURA

1    incorporated here by reference.

2          According to the defense, the indictment, as I've

3    said, does not negate the statutory exception found at 18

4    U.S.C., 951(d), as it does not allege that at no time material

5    to this indictment was Mr. Buryakov officially and publicly

6    acknowledged and sponsored official or representative of a

7    foreign government.

8          The defense states that where an exception is

9    incorporated into the enacting clause of a statute, the burden

10   is on the prosecution to plead and to prove that the defendant

11   is not within the exception.

12         The government, by contrast, argues that, quote -- I

13   think this is a quote -- not the entire quote, but partially,

14   that the United States Supreme Court has affirmed the settled

15   rule that an indictment need not include allegations negating

16   each exception or affirmative defense in a criminal statute.

17   The government states that the indictment here plainly alleges

18   facts sufficient to prove the elements of both charged

19   offenses, namely, a conspiracy and an attempt to violate

20   Section 951, which provides criminal liability for whoever acts

21   in the United States as an agent of a foreign government

22   without prior notification to the attorney general.

23         Relevant authorities here that I've looked at are Rule

24   7(c)(1) of the Federal Rules of Criminal Procedure, which

25   states, in part, that the indictment must be a plain, concise,

F7TVBURA

and definite written statement of the essential facts

constituting the offense or offenses charged.  Also, the Sixth

Amendment to the U.S. Constitution is relevant.  It says, in

part, that in all criminal prosecutions, the accused shall

enjoy the right to be informed of the nature and the cause of

the accusation.

Generally speaking, an indictment need do little more

than track the language of the statute charged and state the

time and place of the alleged crime.  That comes from *United

States v. Stavroulakis*, a Second Circuit case from 1992 found

at 952 F.2d 686.

It is also true -- and this is a quote from *McKelvey

v. United States*, 260 U.S. 353, a 1922 case which we discussed

briefly this morning.  This quote is found:  "It has come to be

a settled rule in this jurisdiction that an indictment or other

pleading founded on a general provision defining the elements

of an offense or of an exception made by a proviso or other

distinct clause, whether in the same section or elsewhere, and

that it is incumbent on one who relies on such an exception to

set it up and establish it.

Also 18 United States Code, 951(a) states, I mentioned

this before, but it's worth saying again:  Whoever, other than

a diplomatic or consular officer or attaché, acts in the United

States as an agent of a foreign government without prior

notification to the attorney general, if required in subsection

F7TVBURA

1    (b), shall be fined under this title or imprisoned not more

2    than ten years or both.

3         And the exception, 18 United States Code, 951(d)

4    states:  For purposes of this section, the term "agent of a

5    foreign government" means an individual who agrees to operate

6    within the United States subject to the direction or control of

7    a foreign government or official, except that such term does

8    not include any officially and publicly acknowledged and

9    sponsored official or representative of a foreign government.

10        In the instant case, the indictment tracks the

11   language of the statute charged and states the time and place

12   of the alleged crimes.  The government is not required, and

13   it's too bad he's not here in this respect, Mr. Fee seemed to

14   indicate to the Court this morning that the government could

15   and may very well do so, that is to say, negate the exception,

16   the applicable exceptions in Section 951 of the indictment.

17        Consequently, the motion to dismiss on this ground is

18   respectfully denied.

19        Now, turning to the 1b exemption.  78 CFR Part 73

20   defines "officially and publicly-acknowledged and sponsored" as

21   meaning that the person described therein has filed with the

22   Secretary of State a fully-executed notification of status with

23   a foreign government or is a visitor officially sponsored by a

24   foreign government whose status is known and whose visit is

25   authorized by an agency of the United States Government.

F7TVBURA

1          The term "agent" is defined as follows in 78 CFR Part

2     73:  Individuals acting as representatives of or on behalf of a

3     foreign government or official who are subject to the direction

4     or control of that foreign government or official.

5          According to the defense, the indictment alleges that

6     Mr. Buryakov was an employee of a Russian bank, VEB, a Russian

7     state-owned agency.

8          Quote from the defense:  "It is a matter of public

9     record that Mr. Buryakov was present in the United States with

10     notice to and authorization by the U.S. Government, which

11     granted him a visa to work as an official at a Russian

12     state-owned agency."

13          Defense also argues that:  "On the face of the

14     indictment, which relates only to registration, Mr. Buryakov

15     was a foreign government official, falling squarely into an

16     exception to registration under Section 951 with respect to

17     officially and publicly acknowledged and sponsored officials or

18     representatives of a foreign government."

19          The government counters the following.  The government

20     says, and this is a quote:  "The fact that Buryakov obtained a

21     work visa to enter the United States as an international banker

22     employed by a New York bank by lying to the United States on

23     his visa application about his intention not to engage in

24     espionage neither conferred upon Buryakov some initial status

25     or immunity nor shielded him from liability under Section 951."

F7TVBURA

1          Additionally, the government states that VEB, that's

2     the bank's assets "are drawn from the reorganization of its

3     predecessor institution, asset contributions of the Russian

4     Federation, income from VEB's activities, voluntary asset

5     contributions and donations, as well as other lawful sources."

6          "As such," this is a continuation of the government's

7     quote, "VEB is only partially funded by the Russian

8     Federation."

9          The government also argues that "the fact that VEB

10    appears to be at least partly funded by the Russian Federation

11    and claims to conduct banking activities on behalf of the

12    Russian Federation does not make every employee of the New York

13    bank an official representative of the Russian Federation."

14          According to Defense Exhibit B, which is an English

15    version of the Russian law, appears to be establishing VEB,

16    these points are true.  VEB is a state corporation established

17    by the Russian Federation.  That's in Article 2, Section 1.

18          The assets of VEB shall be formed with the assets

19    obtained as a result of the reorganization of the bank for

20    foreign economic affairs of the U.S.S.R., the asset

21    contribution of the Russian Federation, income from VEB's

22    activities, voluntary asset contributions and donations, and

23    from other lawful sources.  That's in Article 5, Section 1.

24          VEB shall not be liable for the obligations of the

25    Russian Federation.  The Russian Federation shall not be held

1    liable for the obligations of VEB.  Article 5, Section 2.

2            The government of the Russian Federation shall, one,

3    appoint and dismiss members of the supervisory board of VEB.

4    That's found in Article 6, Section 2.

5            This is not the entirety of these articles in these

6    sections; these are selected sections by me.

7            Members of the supervisory board of VEB shall be

8    appointed by the government of the Russian Federation for a

9    five-year term.  Article 9, Section 4.

10           It is prohibited to delegate the powers of the

11   supervisory board of VEB to the management board of VEB or to

12   the chairman of VEB.  Article 12, Section 2.

13           The chairman of VEB is appointed and dismissed by the

14   president of the Russian Federation.  Article 15, Section 2.

15           The chairman of VEB is a sole executive body of VEB,

16   and he or she shall direct its ongoing activities.  Article 15,

17   Section 1.

18           The Court finds that the defendant, Mr. Buryakov, does

19   not qualify for the exemption in 951 and, relatedly, that VEB

20   does not qualify as a foreign government.  Although the Russian

21   law establishing VEB states that VEB is a state corporation, it

22   is clear from the very same Russian law that VEB was funded in

23   part through other nongovernmental sources, and that neither

24   the Russian Federation nor VEB is liable for one another's

25   legal obligations, notwithstanding the defense contention that

F7TVBURA

1   the bank is owned by the state, that is to say, by Russia.

2           Counsel for the defense has also argued to this Court

3   that "VEB is a freestanding company under Russian law; it is

4   not an arm or agency of the Russian government, but has a

5   separate and independent corporate existence that is

6   well-recognized under U.S. law."  That was contained in a

7   defense letter to the Court dated May 14, 2015 at page 2.

8           Defense counsel has also stated that "The underlying

9   offense in this case has nothing to do with VEB's relationship

10  with the Russian government."  Same letter, same page.

11          Defense has also said that the Russian state is not

12  paying -- this was in the context of a *Curcio* hearing and the

13  retainer agreement for White & Case.  The Russian state is not

14  paying for Mr. Buryakov's defense any more than the U.S.

15  Government could be said to be paying for every corporate

16  action taken by the Export-Import Bank of the United States or

17  the Pension Benefit Guaranty Corporation, both companies the

18  shares of which are owned by the United States.

19          Also, in connection with the resolution of third-party

20  payor for defense counsel, there's a letter dated 5/10/2015

21  where the defense says:  No conflict is created simply because

22  a third party is paying Mr. Buryakov's legal fees.  In

23  particular, we can confirm to the Court that the third party

24  here is not involved in this case and is not related to any

25  codefendant.

F7TVBURA

1           On 4/17/2015, the retainer agreement between VEB and

2      White & Case was presented and refers to Mr. Buryakov as

3      "bank's employee" at page 6.

4           In court on May 18, 2015, defense counsel stated:  "I

5      don't believe that because VEB is paying the legal fees of an

6      employee of the bank that raises any issues any different from

7      any other criminal case where an employee of an institution is

8      charged and the employer agrees to pay the legal fees of that

9      employee."

10          In the same transcript, defense counsel refers the

11     Court to the agreement between VEB and White & Case in which

12     Mr. Buryakov is referred to, again, as the bank's employee.  In

13     the same transcript, defense counsel states:  "This is no

14     different from any other corporate entity providing counsel for

15     an employee in view of the corporation and White & Case."  And

16     on June 1st, 2015, the transcript contains a confirmation that

17     Mr. Buryakov's employer, VEB, was paying the legal fees.

18          Even assuming arguendo that VEB were to qualify as a

19     foreign government, which I have determined it emphatically

20     does not, defendant would nevertheless still not qualify as

21     being officially sponsored by a foreign government whose visit

22     was authorized by an agency of the United States Government, as

23     his status as an agent of a foreign government was not known to

24     the United States, only his status as a VEB Bank employee was

25     known.

F7TVBURA

1          It is alleged that defendant was working as a covert

2    intelligence agent for the Russian Federation, not in a

3    position of a deputy representative of VEB for which he

4    received his visa.  And at no point did Mr. Buryakov notify the

5    United States Government or any agency thereof that he was an

6    intelligence agent for the Russian Federation.

7          Moreover, Mr. Buryakov's position as a deputy

8    representative of VEB may very well not qualify as an official

9    or representative of a foreign government, as that position is

10   not one which is subject to the direction or control of the

11   Russian Federation.  Under the Russian law establishing VEB,

12   only the chairman and the members of the supervisory board of

13   VEB are hired by either the president of the Russian Federation

14   or the government of the Russian Federation.  Mr. Buryakov was

15   neither of those.

16          Further, there does not appear to the Court to be any

17   basis to extend the definition of foreign official to include a

18   wide group of employees, as suggested by the defense, or to

19   employ the definition that may be found in the Foreign Corrupt

20   Practices Act.

21          With respect to vagueness, as I said before, I'm going

22   to get to that in a moment.

23          The motion to dismiss on the 951 grounds is denied.

24          Due process grounds as a basis for dismissal.

25          According to the defense, the indictment represents a

F7TVBURA

clear break with the U.S. Government's prior use of Section

951, namely, the first time the statute ever in its current

form has been applied to a foreign government representative

openly working as such in the United States.

This is a quote from the defense:

"Indeed, since the Section 951(d)(2) exemption was

added, no reported case has been brought against a foreign

government official who has held himself out as such.  Instead,

prior indictments have charged privately-employed individuals

surreptitiously working for foreign governments."

A quote from the defense:  "The glaring absence of any

precedence for the theory of prosecution here shows the fair

notice problem."

The government's response, in summary, is this:

As charged in the indictment, Buryakov was acting as a

covert Russian spy embedded at a bank in Manhattan, a bank that

by Buryakov's own account, is not an arm or agency of the

Russian government, but has a separate and independent

corporate existence that is well-recognized under U.S. law.

That's citing, again, the letter that I cited a few minutes ago

dated May 14, 2005 from the defense.

Throughout the period of the charged offenses,

Mr. Buryakov was reporting on his intelligence-gathering

activities not to his superiors in the New York bank, but to a

team of Russian spies -- this all comes from the government's

F7TVBURA

submission -- but to a team of Russian spies operating in the

United States under the cover of their consular posts.

Mr. Buryakov regularly passed the intelligence he gathered to

other spies during covert meetings with his co-conspirators at

locations outside the New York bank.

         In addition, Mr. Buryakov and his co-conspirators

routinely met and discussed the efforts to collect and to take

information from unsuspecting sources of intelligence in the

United States.

         Among other things -- this is all from the

government's submission -- Mr. Buryakov's co-conspirators

specifically discussed Buryakov's past efforts to hide his true

job, being a spy for the Russian Federation, from some of his

supervisors at a branch of VEB outside of Russia and the United

States.

         Given the substance and nature of these allegations,

according to the government, Buryakov cannot credibly claim

that he was unaware that he might be held criminally

responsible for his misconduct.

         In determining whether or not a statute satisfies the

fair notice prong -- this is a quote from a Second Circuit

decision -- we ask whether the statute, either standing alone

or as construed, made it reasonably clear that at the relevant

time that the defendant's conduct was criminal.  The cite is

*U.S. v. Rosen*, 716 F.3d, 691, which is a Second Circuit case

F7TVBURA

1    from 2013.

2           The motion to dismiss on due process grounds is,

3    therefore, respectfully denied.

4           The statute provided clear notice to the defendant of

5    what conduct was prohibited, and the indictment clearly sets

6    forth that the defendant violated that statute.

7           Another cite is *U.S. v. Lindauer*, 2004 Westlaw

8    2813168, a Southern District case from 2004.

9           And the last branch of the motion to dismiss has to do

10   with vagueness.  It is related, as I said, to the due process

11   branch, but it's briefed separately.

12          Defense counsel argues that applying Section 951 to

13   Mr. Buryakov would render the law unconstitutionally vague as

14   applied because there would be no meaningful standards to guide

15   application of Section 951 to other foreign officials like

16   Mr. Buryakov.  Additionally, the defense states that to the

17   extent the term "publicly-acknowledged and sponsored official"

18   is ambiguous, that ambiguity should be resolved in favor of

19   lenity here, where there is connection between the first branch

20   of the motion and the vagueness issue.

21          Defense counsel argues further that "There are

22   potentially thousands of individuals in the United States like

23   Mr. Buryakov.  Persons openly working in representative

24   capacities for foreign government agencies and

25   instrumentalities, but in nonconsular, nondiplomatic posts,

F7TVBURA

 1    these persons all would be agents of a foreign government under

 2    951(a).  And if Section 951(d)(2) does not provide them with a

 3    safe harbor, they would be vulnerable to prosecution for

 4    failing to register.  The government could pick and choose whom

 5    to address and prosecute based on arbitrary criteria such as

 6    nationality or country of origin.

 7         And finally from that quote from the defense:  "Such

 8    uncabined discretion is one of the dangers that the vagueness

 9    doctrine prevents."  Defense motion at page 19.

10         The government responds that "Buryakov cannot

11    demonstrate that Section 951 is vague as applied to him.

12    Section 951 and related statutes and regulations outline in

13    detail the conduct sought to be proscribed."  That's the

14    government response at page 20.

15         The government also states that "In this case the

16    conduct charged in the indictment is clearly proscribed by the

17    statute.  The indictment alleges that Buryakov knowingly acted

18    in the United States as an agent of the Russian Federation, and

19    specifically at the direction of foreign officials in the

20    United States who were Russian intelligence agents, and that he

21    conspired to do the same.

22         "The indictment and the underlying complaint outline

23    in detail the actions Buryakov took on behalf of the Russian

24    Federation, all while ostensibly working as a banker in New

25    York for the New York bank."  Government response at page 21.

F7TVBURA

1          "The void for vagueness doctrine that we are here

2     considering derives from the constitutional guarantee of due

3     process, hence related to the section immediately before this

4     one, which requires that a penal statute define a criminal

5     offense with sufficient definiteness that ordinary people can

6     understand what conduct is prohibited and in a manner that does

7     not encourage arbitrary and discriminatory enforcement."  The

8     source of that remark is *Mannix v. Phillips,* 619 F.3d 187, a

9     Second Circuit case from 2010.

10          "Although the doctrine focuses both on actual notice

11     to citizens and arbitrary enforcement, we have recognized

12     recently that the more important aspect of the vagueness

13     doctrine is not actual notice, but the other principal element

14     of the doctrine, the requirement that a legislature establish

15     minimal guidelines to government law enforcement."  The cite is

16     *Kolender v.* Lawson, 461 U.S. 352, a 1983 Supreme Court case.

17          The statute here is not vague as applied to

18     Mr. Buryakov; it clearly defines what conduct is prohibited,

19     and the indictment clearly sets forth that the defendant

20     violated this statute.  As I started the proceeding this

21     morning saying there is no finding that that is so, the

22     defendant remains subject and able to enjoy the presumption of

23     innocence unless and until a jury determines that he was

24     guilty.

25          Defense acknowledges that the void for vagueness

F7TVBURA

1    challenge to 951 has been rejected by several federal courts,

2    although not necessarily in exactly the same context as is

3    presented here.  They do that at defense motion page 19 and

4    footnote 12.  The cite is *United States v. Duran,* 596 F.3d

5    1282, it's an Eleventh Circuit case from 2010, where this quote

6    is found:  "Section 951 plainly and concretely identifies the

7    conduct which constitutes its violation, and the statute

8    language is clear and unambiguous."  *See also United States v.*

9    *Truong*, 629 F.2d 908, a Fourth Circuit case from 1980.  And

10   also I refer you to *United States v. Lindauer* again, the 2004

11   case at Westlaw 2813168 from the Southern District, 2004.

12         Consequently, the motion to dismiss on grounds of

13   vagueness is also denied, respectfully.

14         So that leave us then with the motion for a bill of

15   particulars.

16         As I mentioned this morning, it is not my intention to

17   resolve that aspect of the motion at this time, and perhaps I

18   won't need to, because I am directing the parties to meet and

19   confer and see if they cannot resolve all of the issues which

20   are presented in defendant's motion.

21         Hold on for one second.

22         (Pause)

23         THE COURT:  So here's what I'm going to do:  I'm going

24   to schedule a further conference for September 2 at 2 p.m.  And

25   that essentially would presume that you're able to meet and

F7TVBURA

1    confer to continue the progress of the case until then.  If

2    there were some problem that came up in the meantime that

3    required court attention, you'll let me know by correspondence,

4    I'm sure.

5            MR. HERSHMAN:  Your Honor, September 2nd is for what

6    purpose?

7            THE COURT:  Status conference.  Just to see --

8    September 2nd.

9            MR. HERSHMAN:  I think that's a little long for us, if

10   we are not able to get access to the material.

11           THE COURT:  What I'm trying to say is that in setting

12   that date aside assumes that you are able to work things out.

13   In the event that you aren't, then I probably will hear from

14   you by correspondence and we'll see what I can do for you

15   sooner than that.

16           MR. HERSHMAN:  We are interested in setting a trial

17   date.

18           THE COURT:  I can do that right now.

19           MR. HERSHMAN:  Okay.

20           THE COURT:  When do you want to go to trial?

21           MR. HERSHMAN:  Sometime in November or December.

22           MS. SKOTKO:  Your Honor, sorry.

23           Could we have a moment to just confer?

24           (Pause)

25           MR. HERSHMAN:  One second, your Honor.

F7TVBURA

1          (Pause)

2          MR. HERSHMAN:  So, your Honor, I think, having had the

3     opportunity to confer with the government, what we would

4     suggest is an earlier conference date, status conference date,

5     maybe two weeks from now, during which interim point we will

6     discuss the various issues that we need to discuss, which

7     include the meet-and-confer on the discovery, but also any

8     potential issues that may arise here and other issues relating

9     to classified material.

10          THE COURT:  No, I still prefer to keep the schedule

11     that I set, which is September 2, because I think that the

12     defendant has a right to the government's assistance with

13     respect to the discovery.  I think if you talk together in good

14     faith, you will resolve virtually all of those issues.

15          So it's only in the event that you can't that we may

16     have to go to plan B.  But, for now, I'm going to have the

17     status conference on September 2 at 2 p.m.; the trial is on

18     December 7, 2015, at 9 a.m.  There will be a final pretrial

19     conference on December 1, 2015, at noon.

20          And here is the pretrial submission schedule:

21          First of all, the documents I'm about to describe will

22     be due on November 6, and they are as follows:  First, joint

23     jury instructions.  And I want to come back to that and talk

24     about how we do that.  The joint verdict sheet, a one-sentence

25     statement of the case and a one-sentence statement of the

F7TVBURA

1   defense.  That's for purposes of the voir dire.

2   Hypothetically, you could say, The government contends AB, and

3   the defendant responds.  A list of names and places that may

4   come up in the trial also for purposes of the voir dire.  And

5   motions *in limine*.

6           So each side, one motion, although it obviously may

7   have different branches to it, but one document which contains

8   whatever you have to assert by way of motion *in limine*.  And

9   those are, both for the government and the defense, due on

10  November 6.

11          And on November 13, any responses to motions *in limine*

12  that may have been served.

13          Now, back to the joint jury instructions.

14          So in a criminal case I ask the government to do the

15  first draft of the jury instructions at least two weeks before

16  they're due.  On November 6 they should be presented to the

17  defense.  The defense has the opportunity then to review the

18  instructions, to accept or adopt any instructions that it's

19  comfortable with.  As to any instruction that it has an

20  objection to, on the same disk, or however it's presented to

21  you, to note briefly your legal objection, and then the

22  instruction that you would prefer to have in place of the

23  government's instructions.  So there I have it in one document,

24  both sides' position.

25          Christine will give you a sample set of jury

F7TVBURA

1    instructions.  I would ask the government and the defense to

2    use as many of the so-called boilerplate instructions as I

3    typically do use, and for all of you then to focus your

4    attention on the substantive charges that relate to this case.

5            And the same is true of the joint verdict sheet.  The

6    government does the first draft, gives that to the defense, and

7    the defense would either say yes or no or what they would say

8    differently.  And that also would be presented with the defense

9    package as a joint enterprise with the government on November

10   6.

11           So I think that's about as quick as I can give you,

12   but I think you probably need that time to get ready for trial.

13   I'm happy to accommodate you on December 7.

14           Just as a heads up, I think the end of the month I'm

15   going to be away between Christmas Day and January 1st.

16   Perhaps we wouldn't have trial then anyway, if the trial was

17   still ongoing.  But just so you know for scheduling purposes,

18   I'm planning to be away for that -- it's a little less than a

19   week, I think.

20           So anybody have any questions?  No?

21           MS. SKOTKO:  Yes, your Honor, just to flag this for

22   your Honor's attention.

23           We are still in the process of determining whether

24   there will be any motions pursuant to the Classified

25   Information Procedure Act.  If we anticipate that there might

F7TVBURA

1     be something under Section 4 or any other sections, I would

2     suggest that perhaps we could write to the Court and defense

3     counsel and propose a schedule for the filing of those motions.

4             THE COURT:  So it's always best if you could meet and

5     confer, and jointly then you could send me a letter and say

6     this is what you propose, and they either agree or disagree.

7     It could all be contained in the same letter.  You could

8     represent them or they could represent you.  Probably it's

9     something you might do.

10            MS. SKOTKO:  Yes, your Honor.

11            And just to clarify, pursuant to the schedule, there

12    are no further motion practice --

13            THE COURT:  That's it.

14            So if I don't hear anything from you, I'll see you on

15    September 2nd.  If I do, then we'll go to plan B, which is yet

16    to be devised.

17            All right.  Great.  Nice to see you.

18            Thanks very much.

19            (Pause)

20            THE COURT:  Please be seated, everybody.

21            I forgot to ask at the close of the earlier proceeding

22    two minutes or so ago whether there was a speedy trial issue or

23    application that would take us to December 7, 2015, which is

24    the trial date.

25            MS. SKOTKO:  Yes, your Honor.

F7TVBURA

1          I apologize, that was my omission.

2          The government would respectfully request that time be

3     excluded through December 7th, which is the commencement of the

4     trial, to give the parties an opportunity to -- specifically

5     for the defense to review discovery and to prepare for trial.

6          THE COURT:  I'm going to find under 18 United States

7     Code, Section 3161, that the request for adjournment is

8     appropriate and warrants exclusion of the adjourned time from

9     speedy trial calculations.

10          I further find that the exclusion is designed to

11     prevent any possible miscarriage of justice, to facilitate

12     these proceedings, including preparation for trial, and to

13     guarantee effective representation of and preparation by

14     counsel for both parties.  Thus, the need for exclusion and the

15     ends of justice outweigh the interests of the public and the

16     defendant in a speedy trial, pursuant to 18 U.S.C., Section

17     3161(h)(7)(A) and (B).

18          And just to reiterate -- I think we made the point

19     before -- between now and the trial date, apart from what is

20     scheduled to be filed, if anybody is entertaining some other

21     form of filing, that would have to be preceded by a letter to

22     the Court explaining what that is, and then we'll take the next

23     step.  Okay?

24          Great.  Thanks very much.

25                         *    *    *