G1C5burC                        conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

              v.                        15 Cr. 73 (RMB)

EVGENY BURYAKOV,

              Defendant.

------------------------------x

                                   New York, N.Y.
                                   January 12, 2016
                                   10:20 a.m.


Before:

                  HON. RICHARD M. BERMAN,

                                   District Judge


                      APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
EMIL BOVE
STEPHEN RITCHIN
     Assistant United States Attorney

WHITE & CASE
     Attorneys for Defendant
BY:  OWEN PELL
     KELLY NEWMAN

ALSO PRESENT:   ANNA MAZUROVA, Russian interpreter

G1C5burC                          conference

(Case called)

THE COURT:  So, we have a Russian language interpreter.  Typically Mr. Buryakov is able to proceed without one, but we have her here as standby.

Is that acceptable?

MR. PELL:  Yes, your Honor.

THE COURT:  The principal question that I think is open is described in the government's January 8, 2016 letter where there is discussion, ongoing discussion about a deposition being taken of Mrs. Buryakova, and in this letter it is suggested that it is the defense position that this can be done in Ireland.

So, let's hear from both sides as to whether this is going to be workable and what you think.

MR. RITCHIN:  Your Honor, the government, as you will recall when last we were here, the defense had shortly before that proceeding suggested taking the deposition in Ireland.  We said we had wanted to consult with various parties and we have done so.  We have reached out both through the State Department and through the Justice Department in an effort to get some guidance as to how such a proceeding would go forward in Ireland.

The short of what we hear is that this is a novel question for them, this is uncharted territory.  They have not done this sort of thing before in a criminal case coming from

the United States and so we simply don't know how it would proceed; how expeditiously, what the procedures would be. The U.S. Embassy in Dublin looked in its databases and could not find a record of a similar proceeding having been done. There are certainly letters rogatory seeking deposition in civil cases but, in context, in a criminal case, they could not find anything. And so, this is just an uncharted path and we aren't really in a position to give the Court guidance to, from the government's perspective, how this would go.

We did discuss, again briefly with the defense, the option of the United Kingdom where there is more of a track record but the defense position is unchanged, that that's not an acceptable alternative.

On the larger issue, as the Court knows, the government's position has been and still is that the defense has not met the legal standards for a Rule 15 deposition and our view is that this process has weakened the defense showing further because with respect to the issue of unavailability, the two reasons that were offered initially that Mrs. Buryakova was unwilling to leave Russia, that reason seems to have gone by the boards; and her distrust of the United States, I think -- I hope -- has been addressed by some assurances that the government was able to provide about not using the deposition as an occasion to seek to effect her arrest.

THE COURT:  Okay.  So, I'm going to have a suggestion

G1C5burC                    conference

for you in a minute but let's first hear from the defense.

MR. PELL:  Thank you, your Honor.

Your Honor, when we were before you on December 3rd you highlighted that the Court was inclined to allow us to proceed with the deposition but what your Honor spent most of the time at the hearing talking about was wanting to ensure the integrity of the process.

THE COURT:  Right.

MR. PELL:  Which we certainly agree with because we want to pick a venue that will allow us to create a record that will then leave the Court capable of making a ruling as to admissibility at trial which your Honor said was going to be how you were going to reserve that issue for trial.

Now, your Honor will recall that when we came to you on the initial motion the government had no problem being ready with chapter and verse as to why Russia was not a place that would work for them and was not a place that would necessarily work for the Court and there was a lot of time spent on that.

Your Honor, we have followed the admonitions of the Department of State website and the admonitions of the Federal Handbook for Judges as to discovery abroad and what the Department of State website encourages parties to do -- and it says is perfectly proper -- is to go court to court where that is possible under local law.  And that is, the Department of State recognizes that when you go through the government this

is a time-consuming and cumbersome process -- "time-consuming"
and "cumbersome" being words I'm quoting from the Department of
State website.  And the government was surprised when we told
them this but the State Department website specifically says
that parties are encouraged to streamline the procedures here
to reduce the time and burden including having local counsel
make direct application to local courts where that procedure is
available.  And, your Honor, in Ireland that is what we can do.

What I would like to do, your Honor, is hand up the
draft order and letter of request we have given to the
government because I think it would help the Court to see we
have put into the letter of request everything that we can
think of to ensure the integrity of the process.  So, if I
could hand that up to the Court so we have a basis?

THE COURT:  You certainly can but here is what I was
going to suggest -- and I take it you have seen that already?

MR. RITCHIN:  I think on Friday it was shown to us.

THE COURT:  It doesn't sound like an overly
complicated issue.  You can certainly hand up what you have,
but why don't you spend some time today and delineate what the
procedures would be in this deposition.  I imagine you would
delineate the same procedures that would occur if a deposition
were to take place here in New York, for example, and at least
get that down, what the mechanics are, and then I will take a
look at what you hand up and also what you come up with.

G1C5burC                           conference

MR. PELL:  So, what we have done is we actually have delineated as much as we could think of including when we would come to the court if we had a problem.

THE COURT:  Come to the Court meaning this Court?

MR. PELL:  Give you a call from Ireland.

THE COURT:  I thought you were going to suggest -- you know, I have never been to Ireland.

MR. PELL:  By all means, your Honor.

THE COURT:  I am certainly not opposed but I don't know what value I would do, I would have there.  But, let's leave it open.

Why don't I hear from the government if you have anything that you want to add to supplement these materials in terms of the procedures.

MR. RITCHIN:  I do have some thoughts, your Honor.  Do you want to hear now or --

THE COURT:  Preliminarily.  I would rather see it -- I would certainly like to see it in writing too but, yes, what is your off-the-cuff, so to speak, thought?

MR. RITCHIN:  Let me just pull out my copy.

There are some small issues with respect to the document.  The document recounts that this is done on consent which is not the case.

THE COURT:  Sure.

MR. RITCHIN:  There are --

G1C5burC                    conference

THE COURT:  It is understood that if you wanted to reserve your objection to the concept you could do that.

MR. RITCHIN:  Right.

THE COURT:  It sounds like you might, for whatever reason, that you might want to do that.

So, assuming we can get beyond that, then see if the procedures work for you.

MR. RITCHIN:  Right.  Understood.

With respect to the procedures, a few things that came to mind are there is a listing in the proposed document of the individuals who would be present at the deposition.  It does not include agents of the FBI which would be the sort of thing we would want to see as if we were in the courtroom.  It does include an Irish solicitor.  It is not clear to me what role he would play in this deposition.

The proceedings also contemplate telephonic ruling by the Court in the event of the witness not answering a question.  It is not clear to me how that would work in terms of time zones and that sort of thing.

The document also contemplates that the application would be made to the Irish Courts *ex parte* and I think the government would want to see what the application is so that we know what is being represented to the Irish courts.

THE COURT:  That sounds reasonable.  I mean, it sounds reasonable, but.

G1C5burC                          conference

MR. RITCHIN:  There also was, in prior conversations, the concept that the Irish Department of Foreign Affairs would be given notice of this application which I don't see reflected in the document.

And with respect to the conduct of the deposition itself, Rule 15 provides that the Court can order that documents, records, etc. be brought to the deposition.  And I can read the language, Rule 15 says if the Court orders the deposition to be taken it may also require the deponent to produce, at the deposition, any designated material that is not privileged including any book, paper, document, record, reporting or data.  We have, in the government's view, only a vague sense of what the witness would testify to but would want to see whatever documents, records, etc., are related to her testimony and would also want, pursuant to Federal Rule of Evidence 612, any documents she used to refresh her recollection in connection with the deposition.

Those were the things that struck me off-the-cuff as issues that might be addressed with respect to this.

MR. PELL:  Your Honor, certainly the list he made as to who would attend, I didn't realize they would want to bring an FBI agent.  If they want to bring, in effect their client, I get that, that's fine.  I don't see that being a problem.

The reason we were going to have the Irish solicitor there is if the question arose as to what the Irish Court had

G1C5burC                        conference

ordered.  He is happy to sit outside the room because in the room we think we are going to be able to get the oath and monitor of the deposition a retired Justice of the Supreme Court.

THE COURT:  The room would be, what, in a solicitor's office?

MR. PELL:  We foresee a hotel, a hotel conference room because of size.  Law firms in Ireland aren't that big and conference rooms aren't that big.

In terms of the telephonic ruling, your Honor, we have set aside three days for the deposition not because we think it will be necessary but in case a dispute breaks out given the time difference to effectively give the parties a chance to adjourn, call the Court, seek a ruling, and then get back to the deposition so we have actually built that into what I have just handed up to you.  *Ex parte*, we are perfectly happy to have someone from the government be -- specially they can see the application and if they wanted to have someone go in with the solicitor, that would be fine too, I think.  The reason we had said ex parte is to basically make clear to the Court how streamlined this can be assuming the parties want to go forward.

The way the Irish government gets notice, your Honor, is once the order is entered by the Irish Court then, as a courtesy, the Court reaches out to the government to say we

G1C5burC                        conference

have done this.  We had a request from a Court in the United States, Court to Court, which is permitted.  As a matter of comity we have granted this request.  You, the Irish government, are now on notice as a courtesy we are going to be doing this and people will be coming from the United States to Ireland for that purpose.

THE COURT:  Is this your submission --

MR. PELL:  Yes, your Honor.

THE COURT:  -- which I haven't read yet, does it indicate the Court, in particular, would have jurisdiction where this deposition takes place?

MR. PELL:  It does, your Honor.  It is the High Court in Dublin.

THE COURT:  Got it.

MR. PELL:  And there will be a specific justice -- this is sort of done as we would do it in, like, a part I.

THE COURT:  Got it.

MR. PELL:  You go and get the Court --

With regard to documents, we had provided here that any documents used would be part of the transcript and would move with it.  We have given the government a list of the documents that we would want to use to both prepare Mrs. Buryakova and potentially use at the deposition, so they have actually got that list.  I would think that they're not entitled to know beforehand the very specific documents we

G1C5burC                        conference

would use at the deposition because that goes to our privilege and our work product, but we have specially given them a list and in fact, your Honor, that will be -- that list includes things are the classified documents.  The unclassified, if they need some of that we can give that too, although most of the documents in the case have been classified to date.  We will be getting to that shortly.

We will be giving them a list of the classified documents that we want to use to prepare Mrs. Buryakova and/or use at the deposition so they have that already and will have a chance to look at it, and we would want those documents there. So, we would be applying to the Court for relief from the protective order for the purposes of using these materials now about to be declassified to both prepare Mrs. Buryakova and for use at the deposition.

So, actually none of the issues raised by Mr. Ritchin I think are -- I don't think that really -- none of them are insurmountable and I think the order is easily modified.

THE COURT:  Okay.

So, can I ask you to submit today your written modifications or suggestions with respect to the submission that defense counsel had just made?

MR. RITCHIN:  Can I just have until tomorrow in case I need to consult with somebody else?

THE COURT:  Okay.  Sure.  Sounds like it is moving in

G1C5burC                          conference

the right direction.

Now, I think your reference was to the various SIPA admissions.  I did get one, I think, yesterday or this morning. In any event, I have had a chance to take a look at it from the government.  I don't know if you are planning to respond to that.  I think we set a response date of February 2, if you wanted to do that.

MR. PELL:  Your Honor, we did get a call from the government yesterday saying that they were going to send something in to you.  They gave us a list of what they were proposing to have declassified.  It appears to include certainly most of what we ask for.  There are a few categories where I just need to speak to Mr. Hershman to see whether we will have any further comment on those categories but I think, your Honor, our principal concern is just how quickly we can get the materials because we are two and a half months away, or roughly that, getting toward that in terms of trial.

We understand from the government that with regard to transcriptions of conversations that were draft transcriptions the government will have an objection to producing those and that they feel that objection has not yet been addressed.  We would have hoped that that would have been raised before now because we obviously want this material, we need this material as quickly as possible.

We understand that there is a stipulation already in

G1C5burC                         conference

the case where defense has stipulated that anything marked "draft" will not be offered at trial and we are certainly happy to live with that stipulation.  And so, your Honor, the issue is going to be how quickly we can get this material so we can get relief from the protective order and then be able to start showing this material to Mrs. Buryakova in Russia, for example, and obviously Mr. Buryakov will start going through things as soon as he can get them in the MCC.

THE COURT:  You are not planning to submit a reply on February 2?

MR. PELL:  I can't tell you right now, your.  I probably will be able to tell you by next week.

THE COURT:  Okay.  All right.  Good.

So, meet and confer seems to work and seems to be working here.  Just to remind you, we have a final pretrial conference scheduled for March 10, the trial to begin on April 4, the pretrial submissions are due March 1, and if there are motions *in limine* any response to such motions is due on March 8.

Hold on for one second.

(Pause)

MR. PELL:  Your Honor, if I may?

THE COURT:  Yes.

MR. PELL:  Your Honor, can you provide an outside date to the government by when we will have any redacted materials

G1C5burC                          conference

and when we will have any objections to the list we have given them as to Ms. Buryakova?  Because I think that would just facilitate moving the process along.

THE COURT:  So, sure.  Why don't you get together and see if you can't work that out between yourselves, all of those issues.  I am going to schedule a further conference for next week for Wednesday, the 20th, at 11:00 if we need it.  If all these issues get resolved through meet and confer I will vacate the conference but we will schedule a conference for 2/20 at 11:00 a.m. and we will see where we are.

MR. PELL:  I think you meant 1/20.

THE COURT:  January, yes.

Anything else from anybody?

MR. RITCHIN:  No.

THE COURT:  Great to see you all.  Thank you very much.

o0o