# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

EVGENY BURYAKOV,

Defendant.

15 CR. 73 (RMB)

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
## AND RESPONSE TO THE MOTIONS *IN LIMINE* BY THE UNITED STATES

WHITE & CASE LLP

Scott Hershman
Daniel Levin
Owen C. Pell
Gregory G. Little
Kimberly A. Haviv
1155 Avenue of the Americas
New York, New York   10036
(212) 819-8200
*Attorneys for Defendant Evgeny Buryakov*

# TABLE OF CONTENTS

Page

I.    The Sponsored Person Exception And Legal Commercial Transaction Exception Are Statutory Exceptions To The Statutory Definition Of "Agent Of A Foreign Government" In Section 951(d) Which The Government Must Disprove Beyond A Reasonable Doubt .................................................................2

    A.    The Statutory Language Makes Clear that the Sponsored Person Exception and Legal Commercial Transaction Exception Must Be Proven By the Government Beyond A Reasonable Doubt ........................ 2

    B.    The Government Must Prove Beyond a Reasonable Doubt that the Defendant Falls Within the Statutory Definition of "Agent of a Foreign Government," and This Includes Proving that He Was Not Within the Definition's Exceptions ............................................................... 4

    C.    Courts Applying Section 951 Have Required the Government to Prove "Agent of a Foreign Government," Including the Statutory Exceptions, Beyond A Reasonable Doubt .................................................... 6

    D.    The Government's Cases Involve Affirmative Defenses that Do Not Negate an Essential Element of the Crime and Are Inapplicable Here ...... 9

II.   Defendant Has A Constitutional Right to Present Evidence on the Sponsored Person Exception and the Law of the Case Doctrine Does Not Preclude Him from Doing So ...................................................................11

    A.    The Constitutional Right to Present Evidence .......................................... 11

    B.    The Law of the Case Doctrine Does Not Apply to Preclude the Sponsored Person Exception ................................................................... 13

III.  Defense Counsel's Prior Assertions Regarding VEB's Status Are Not Relevant And, In Any Event, Are Substantially More Prejudicial Than Probative ..............17

    A.    The Curcio Statements. .......................................................... 17

    B.    The Curcio Statements Concerned a Legal Argument on Whether for Conflict Purposes VEB Constituted a Separate Entity from the Russian Federation. .......................................................... 18

    C.    What Constitutes a "Foreign Government" under Section 951 Is Different from the Standard for a *Curcio* Conflict or Under the FSIA. ... 22

    D.    Admitting Defense Counsel's Statements Regarding VEB in the Curcio Proceedings Would Only Confuse and Mislead the Jury ........................ 23

    E.    The Government's Suggestion that White & Case Should Be Disqualified Is Meritless. .......................................................... 23

Americas 91121627

# TABLE OF AUTHORITIES

## CASES

Anderson v. United States, 294 F. 593 (1923)...................................................................9

Arizona v. California, 460 U.S. 605 (1983)......................................................................16

Callahan v. U.S. Filter, Inc., 2005 U.S. Dist. LEXIS 49507 (W.D.N.Y.) ........................22

Crane v. Kentucky, 476 U.S. 683 (1986).....................................................................12, 15

Dixon v. United States, 548 U.S. 1 (2006) .....................................................................3, 11

EM Ltd. v. Republic of Argentina, 473 F.3d 463 (2d Cir. 2007) ....................................20

First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba, 462 U.S. 611 (1983)..............20

In re Winship, 397 U.S. 358 (1970)................................................................................14

Ledbetter v. United States, 170 U.S. 606 (1898)..............................................................9

Mathews v. United States, 485 U.S. 58 (1988)................................................................12

McKelvey v. United States, 260 U.S. 353 (1922) ..............................................................9

New York State Nat'l Org. for Women v. Terry, 159 F.3d 86 (2d Cir. 1998) ................21

Patterson v. New York, 432 U.S. 197 (1977) ...................................................................10

Smith v. United States, 133 S. Ct. 714 (2013) ................................................................10

United States v. Bailey, 444 U.S. 394 (1979)..................................................................16

United States v. Campa, 419 F.3d 1219 (11th Cir. 2005), vacated 429 F.3d 1011 (11th Cir. 2005), aff'd, 459 F.3d 1121 (11th Cir. 2006) ....................................................................8

United States v. Campa, No. 1:98-cr-00721-JAL (S.D. Fla. 2001), ECF No. 1261..........................7

United States v. Carr, 557 F.3d 93 (2d Cir. 2009) ..........................................................16

United States v. Duran, 596 F.3d 1283 (11th Cir. 2010)..................................................21

United States v. Durham, 825 F.2d 716 (2d Cir. 1987)....................................................13

United States v. Goldson, 954 F.2d 51 (2d Cir. 1992)......................................................13

United States v. Hamilton, 538 F.3d 162 (2d Cir. 2008)..................................................10

United States v. Hartsock, 347 F.3d 1 (1st Cir. 2003) ................................................................9, 10

United States v. Hernandez, No. 1:98-cr-00721-JAL (S.D. Fla. June 5, 2001), ECF No. 1280 ....7, 8

United States v. Kloess, 251 F.3d 941 (11th Cir. 2001) ........................................................4, 7, 15

United States v. Latchin, 554 F.3d 709 (7th Cir. 2009)...............................................................21

United States v. Locascio, 6 F.3d 924 (2d Cir. 1993) ..................................................................18

United States v. Mayo, 705 F.2d 62 (2d. Cir. 1983)...........................................................4, 5, 11

United States v. McKeon, 738 F.2d 26 (2d Cir. 1984) ...............................................................22

United States v. Morrison, No. 4-CR-699 (DRH), 2009 U.S. Dist. LEXIS 20706 (E.D.N.Y. Feb. 26, 2009) ..............................................................................................................................6

United States v. Murray, 618 F.2d 892 (2d Cir. 1980) ................................................................5

United States v. Park, No. 05-Cr.-59 (S.D.N.Y. July 26, 2006), ECF No. 166................................7

United States v. Pugh, No. 15-cr-116 (NGG), 2015 U.S. Dist. LEXIS 170271 (E.D.N.Y. Dec. 21, 2015) ...........................................................................................................................6, 9

United States v. Sampson, 371 U.S. 75 (1962)........................................................................14

United States v. Shaaban, No. IP 05-34-CR-01-T/F (S.D. Ind. 2006) ........................................8, 9

United States v. Simpson, 929 F. Supp. 2d 177 (E.D.N.Y. 2013)......................................14, 16, 17

United States v. Tokash, 282 F.3d 962 (7th Cir. 2002) ..............................................................15

United States v. Whicker, No. 14-6555, 2015 WL 5845799 (6th Cir. Oct. 8, 2015) ......................16

## STATUTES AND RULES

28 C.F.R. § 73.1 ...............................................................................................12, 21, 22, 23

18 U.S.C. § 951(a) .................................................................................................2, 3, 6, 12

18 U.S.C. § 951(d) ....................................................................................................... passim

Fed. R. Evid. 106 ..........................................................................................................23

U.S. Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-11 ("FSIA")...................19, 20, 22, 23

## MISCELLANEOUS

WRIGHT AND LEIPOLD, FEDERAL PRACTICE AND PROCEDURE § 194 (2008) ....................................13

## PRELIMINARY STATEMENT

Defendant Evgeny Buryakov respectfully opposes the following of the Government's motions *in limine* ("Gov't Mot."):[1]

- Precluding Defendant from having the jury determine whether Mr. Buryakov was an officially and publicly acknowledged and sponsored representative of the Russian Federation, or an employee of such a representative (the "Sponsored Person Exception") or presenting evidence or argument in support of this exception ("Gov't Mot. #2");

- Ruling that Defendant, rather than the Government, bears the burden of proof relating to two statutory exceptions to the definition of "agent of a foreign government," which the Government incorrectly characterizes as affirmative defenses that must be proven by the Defendant (the Sponsored Person Exception and the Legal Commercial Transaction Exception) ("Gov't Mot. #4"); and

- Ruling that certain of defense counsel's prior statements made in the *Curcio* proceedings are admissible facts if the Defendant is permitted to introduce evidence on the Sponsored Person Exception ("Gov't Mot. #5").

Cutting across the first two motions is an incorrect legal assertion that the two statutory exceptions to the definition of "agent of a foreign government" (the Sponsored Person Exception and the Legal Commercial Transaction Exception) are affirmative defenses that the Defendant

---

[1] Defendant does not oppose the Government's motions seeking an order that arguments or evidence regarding Defendant's lack of knowledge of the Attorney General notification requirement are irrelevant [Gov't Mot. #1], or that Defendant may not present evidence regarding the consequences of a conviction [Gov't Mot. #3], although Defendant may seek to elicit evidence regarding the history of prisoner exchanges for SVR agents, and the lack of any such approach in this case, as evidence that Defendant is not an SVR agent—and not as a consequence of conviction.

Americas 91121627

must prove rather than statutory elements the Government must prove (or negate) beyond a reasonable doubt – a position that is directly contradicted by the statutory language and that no other court has apparently adopted in a Section 951 case.  (Point I, below)

As to the Sponsored Person Exception, the Government misstates the law of the case doctrine, which does not apply here and which, if it did, would impermissibly interfere with Defendant's constitutional right to present a defense to the jury and effectively grant the Government a directed verdict before evidence is presented.  (Point II, below)  The Government also incorrectly argues that statements of legal argument by counsel in the *Curcio* proceedings should be admitted as fact evidence to the jury.  (Point III, below)

**I.      The Sponsored Person Exception And Legal Commercial Transaction Exception Are Statutory Exceptions To The Statutory Definition Of "Agent Of A Foreign Government" In Section 951(d) Which The Government Must Disprove Beyond A Reasonable Doubt**

The Government argues that Mr. Buryakov bears the burden of proving by a preponderance of the evidence that he is <u>not</u> an "agent of a foreign government" because he falls within the Sponsored Person Exception and/or the Legal Commercial Transaction Exception. (Gov't Mot. at 18-24)  The Government's position, however, is contrary to the express statutory language of Section 951, all reported Section 951 cases, and controlling Supreme Court and Second Circuit authority which hold that the burden is on the Government to prove every defined element of the charged offense beyond a reasonable doubt.  Because these exceptions form part of an element of the offense that the Government must prove beyond a reasonable doubt, rather than affirmative defenses that the Defendant must prove, Gov't Mot. #4 should be denied.

**A.      The Statutory Language Makes Clear that the Sponsored Person Exception and Legal Commercial Transaction Exception Must Be Proven By the Government Beyond A Reasonable Doubt**

Section 951(a) provides that "Whoever, other than a diplomatic or consular officer or

attaché, acts in the United States as an agent of a foreign government without prior notification

to the Attorney General" shall be fined or imprisoned.  18 U.S.C. § 951(a).  Section 951(d) then

provides the statutory definition of "agent of a foreign government" and thus this element of the

charged offense by stating that the term "'agent of a foreign government'" means an individual

who agrees to operate within the United States subject to the direction or control of a foreign

government or official . . . ."  18 U.S.C. § 951(d).

But Section 951(d) does not stop there.  Rather, Section 951(d) then expressly states that

"such term ["agent of a foreign government"] <u>does not include</u> . . .  (2) any officially and

publicly acknowledged and sponsored official or representative of a foreign government . . . (3)

any officially and publicly acknowledged and sponsored [staff member or employee of a foreign

government official or representative]; or (4) any person engaged in a legal commercial

transaction."  <u>Id.</u> (emphasis added).

Thus, a person falling within the Sponsored Person Exception or Legal Commercial

Transaction Exception is <u>not</u> an agent of a foreign government.  In this regard, the following

statement by the Government is wrong:

> Section 951(a) establishes the criminal offense, and one element of the
> crime is that the defendant "act[ed] in the United States as an agent of a
> foreign government." 18 U.S.C. § 951(a).  <u>Section 951(d), in turn, defines
> the term "agent of a foreign government," and then describes categories of
> individuals who, while fitting within that definition, are excused from the
> notification requirement of Section 951(a)</u>. These affirmative defenses,
> therefore, provide "an excuse that allows an exception from liability."
> <u>Dixon v. United States</u>, 548 U.S. 1, 14 n.9 (2006).

(Gov't Mot. at 22-23 (emphasis added))  Persons within the Legal Commercial Transaction

Exception or Sponsored Person Exception are not individuals "who, while fitting within that

definition [of agent of a foreign government] are excused from the notification requirements" of

the statute.  Rather, as the statute expressly states, they are not agents of a foreign government at

3

all since they are excluded from the definition of "agent of a foreign government" itself.  And that distinction in the statutory language is key to the distinction between a statutory element the Government must prove (or here negate) beyond a reasonable doubt and an affirmative defense the Defendant must prove.

> **B.    The Government Must Prove Beyond a Reasonable Doubt that the Defendant Falls Within the Statutory Definition of "Agent of a Foreign Government," and This Includes Proving that He Was Not Within the Definition's Exceptions**

Where, as here, an element of an offense is based on a definition and that definition contains an exception, and the defendant puts the exception at issue,[2] the Government must prove beyond a reasonable doubt that the statutory exception does not apply.

United States v. Mayo, which the Government cites (Gov't Mot. at 21-22), confirms this point.  705 F.2d at 73-76.  In Mayo, the charged offense applied to transactions involving a "firearm," and the statutory definition of "firearm" provided that "such term does not include an antique firearm."  Id. at 73.  The Second Circuit described how once the defendant met the "minimal burden" of setting up and establishing the statutory exception, "the government ultimately bears the burden of disproving the applicability of the exception when it is properly presented."  Id. at 74-75.  Notably, in Mayo, the Government "d[id] not argue that the [defendants] bore the burden of proof or persuasion on the antique firearm exception," and contended only that "the [defendants] were obligated to produce some evidence to put the exception at issue before the government was obligated to prove its inapplicability beyond a

---

[2] This is sometimes referred to as the "burden of production."  Defendant does not contest that he must place the exception in issue, although that burden is minimal.  See United States v. Mayo, 705 F.2d 62, 74-75 (2d. Cir. 1983) (referring to the defendant's "minimal burden" of putting on "some evidence"); see also United States v. Kloess, 251 F.3d 941, 948-49 (11th Cir. 2001) (referring to defendants' "minimal burden").  Defendant is more than capable of meeting this minimal burden.

reasonable doubt." Id. at 74 (emphasis added).  The court likewise noted that "[i]t has long been recognized that statutes which provide affirmative defenses in the form of exceptions to a general proscription do not reduce or remove the government's traditional burden of proving beyond a reasonable doubt every fact necessary to constitute the offense."[3]

Mayo echoed the Second Circuit's discussion in United States v. Murray, 618 F.2d 892, 901 (2d Cir. 1980), which involved the offense of distributing or possessing with intent to distribute a controlled substance "except as authorized by this subchapter," which required registration with the Attorney General, and also exempted certain persons from the registration requirements.  In Murray, the statute itself specified that "it shall not be necessary for the United States to negative any exemption or exception" and that "the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit."  Id.  Even with this express statutory language, the court reaffirmed that "once the defendant introduces evidence that he falls within one of the statutory exemptions or exceptions," "the government bears the burden of proving non-registration or non-entitlement," as mandated by due process.  Id.  Only because the Murray defendants had "failed to offer a shred of evidence" and "did not raise the claim they now make until after trial and do not suggest even now what exception or exemption is possibly applicable" did the government have no duty to prove the non-applicability of the exceptions and exemptions.  Id.

Section 951 is structured just like the statutes considered in these authorities and should be treated the same way.  Section 951(d) defines the scope of an element of the offense—being an "agent of a foreign government"—and expressly excepts certain categories of people from

---

[3] The Mayo court ultimately sustained the defendants' convictions because "neither offered a shred of evidence suggesting that the guns involved . . . were antique firearms."  705 F.2d at 76.

Americas 91121627

being such agents.[4]   Once Mr. Buryakov introduces some evidence to put in play these definitional exceptions to "agent of a foreign government," it is the Government's burden of proving that he was an "agent of a foreign government" including by disproving beyond a reasonable doubt the definitional exceptions to "agent of a foreign government" under Section 951(d)(2)-(4).

To like effect is United States v. Morrison, which involved an offense under the Contraband Cigarettes Trafficking Act which prohibited "any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco."  No. 4-CR-699(DRH), 2009 U.S. Dist. LEXIS 20706, *4-5 (E.D.N.Y. Feb. 26, 2009).   "Contraband cigarettes" was specifically defined in the statute as having several elements, the last of which was "which are in the possession of any person other than" a list of exempt persons, such as a person holding certain IRS permits and certain common carriers.  Id. at *5, *139-140.   The court held that if the defendant "com[es] forward with information suggesting" that the exception applies, "the burden of proof rests solely and exclusively with the government."  2009 U.S. Dist. LEXIS 20706, at *139-41 (emphasis added).[5]

### C.   Courts Applying Section 951 Have Required the Government to Prove "Agent of a Foreign Government," Including the Statutory Exceptions, Beyond A Reasonable Doubt

The Government's argument for burden-shifting cites no Section 951 cases, let alone a case in which the defendant was given the burden of proving that he was not an "agent of a

---

[4] Just as the court in United States v. Pugh found it significant that the term "personnel" was placed in quotation marks in the definitional subsection of the statute there at issue, here too the placement of quotation marks around "agent of a foreign government" in 951(d), "indicat[es] that [the subsection] was intended to piggy-back on the statutory term" in 951(a).  No. 15-cf-116 (NGG), 2015 U.S. Dist. LEXIS 170271, at *25-26 (E.D.N.Y. Dec. 21, 2015).

[5] In Morrison, and unlike here, the defendant had not put the exception "in play" and had not offered any evidence to suggest that the exceptions applied.  2009 U.S. Dist. 20706, at *144.

Americas 91121627

foreign government" because he fell within the exceptions to the definition of that term.  In fact, each reported Section 951 case located has made it the government's burden of proving all of Section 951(d), including the elements of Section 951(d)(2)-(4).

- In United States v. Park, defendant claimed to have been a businessman conducting legal business.   Now-Circuit Judge Chin instructed on the Legal Commercial Transaction Exception as part of the elements to be proven by the government:

  > An agent of a foreign government means an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.  The term does not include any person engaged in a legal commercial transaction.

  > The term legal commercial transaction means any exchange, transfer, purchase or sale of any commodity, service or property of any kind not prohibited by federal or state law.

  Transcript of Proceedings as to Tongsun Park Held on July 12, 2006 at 1695:23-1696:5, United States v. Park, No. 05-Cr.-59 (S.D.N.Y. July 26, 2006), ECF No. 166 (Hershman Decl., Ex. A).

- In United States v. Hernandez, defendants claimed they were legitimate agents, and not undercover operatives, of the Cuban government.  The court instructed the jury on the Sponsored Person Exception as being part of the government's burden—and in doing so, rejected a government motion *in limine* to make proof of this element the defendant's burden:[6]

  > In order to establish a violation of these counts of the indictment, the government must prove all of the following beyond a reasonable doubt:

  > First, that the defendant acted as an agent of a foreign

---

[6] Defendant successfully opposed the motion, relying on Kloess, 251 F. 3d 941.  See Memorandum of Law in Support of Proposed Jury Instruction Defining "Agent of a Foreign Government," United States v. Campa, No. 1:98-cr-00721-JAL (S.D. Fla. 2001), ECF No. 1261.

7

government.

...

An "agent of a foreign government" means an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

An "agent of a foreign government," however, does not include any officially and publicly acknowledged and sponsored official or representative of a foreign government."   The meaning of any officially and publicly acknowledged and sponsored official or representative of a foreign government includes any official of a foreign government on a temporary visit to the United States for the purpose of conducting official business internal to the affairs of that foreign government.

. . .

You are instructed that you must return a verdict of not guilty as to any count charging the defendant with acting as a foreign agent, <u>unless the government proves beyond a reasonable doubt that the defendant was not an officially and publicly acknowledged and sponsored official or representative of a foreign government</u>.

Court's Jury Instructions at 32-33, <u>United States</u> v. <u>Hernandez</u>, No. 1:98-cr-00721-JAL (S.D. Fla. June 5, 2001), ECF No. 1280 (Hershman Decl., Ex. B) (emphasis added).[7]

- In <u>United States</u> v. <u>Shaaban</u>, the court instructed that "the government must prove . . . beyond a reasonable doubt" that "Defendant knowingly acted in the United States as an agent of a foreign government," and:

An "agent of a foreign government" means an individual who agrees to operate within the United States [as a representative of, or on behalf of, a foreign government or official, who is] subject to the direction or control of that foreign government or official, except that such term does not include:

(1) a duly accredited diplomatic or consular officer of a foreign government, who is so recognized by the Department of State;

(2) any officially and publicly acknowledged and sponsored official or representative of a foreign government;

(3) any officially and publicly acknowledged and sponsored

---

[7] Despite appeals on several grounds, the 951(d) instruction was never raised as an issue.  <u>See United States</u> v. <u>Campa</u>, 419 F.3d 1219 (11th Cir. 2005), <u>vacated</u> 429 F.3d 1011 (11th Cir. 2005), <u>aff'd</u>, 459 F.3d 1121 (11th Cir. 2006) (rehearing en banc).

Americas 91121627

member of the staff of, or employee of, an officer, official, or representative described in paragraph (1) or (2), who is not a United States citizen; or

(4) any person engaged in a legal commercial transaction.

Final Jury Instruction Nos. 25-26, United States v. Shaaban, No. IP 05-34-CR-01-T/F

(S.D. Ind. 2006) (Hershman Decl., Ex. C).

None of these cases placed the burden of proof on the defendant to show that he fell outside the definition of "agent of a foreign government" by virtue of the definition's exceptions.

### D.     The Government's Cases Involve Affirmative Defenses that Do Not Negate an Essential Element of the Crime and Are Inapplicable Here

The Government's discussion of the Section 951(d) definition of "agent of a foreign government" inappropriately relies primarily on comparisons to affirmative defenses, such as withdrawal from conspiracy, that do not negate elements of a crime.[8]  For example, United States v. Hartsock, 347 F.3d 1, 4-5 (1st Cir. 2003), involved possession of a firearm by an individual previously convicted of a misdemeanor crime of domestic violence.  The statute contained an affirmative defense for individuals who were not represented by counsel on the prior domestic violence conviction, or who did not knowingly and intelligently waive their right to counsel.  Id. The court specifically noted that this exception "is not located in either the subparagraph defining the underlying crime or a subparagraph explicitly defining a term used in the underlying crime."  Id. at 6 (emphasis added).  The court also noted that this particular exception "does not serve to negative any facts of the crime" and distinguished it from defenses "that negative guilt

---

[8] The Government also cites cases addressing what must be pleaded in an indictment rather than burdens of proof at trial, which is not the same thing, and these cases are inapposite.  (Gov't Mot. at 20-21, citing Anderson v. United States, 294 F. 593, 595-97 (1923) (assessing whether an exception must be pleaded in the indictment); Ledbetter v. United States, 170 U.S. 606 (1898) (same); McKelvey v. United States, 260 U.S. 353, 357 (1922) (same); see Pugh, 2015 U.S. Dist. LEXIS 170271, at *21 (where a statutory definition "defines an element of the crime, it must be proven by the Government beyond a reasonable doubt," even though it need not be pleaded in the indictment))

Americas 91121627

by cancelling out the existence of some required element of the crime."  Id. at 7-8.  Having

reviewed the statute's structure, and given that the exception did not negate any element of the

offense,[9] the court found that the defendant bore the burden of proof as to this defense.  Id. at 10.

The Government's citations to cases involving withdrawal from a conspiracy are

similarly off-point.  In Smith v. United States, 133 S. Ct. 714 (2013) (Gov't Mot. at 19-20, 22-

23), the Court discussed how "[w]ithdrawal does not negate an element of the conspiracy crimes

charged" because the elements of the crime were the conspiracy and the defendant's knowing

participation in it, and "[f]ar from contradicting an element of the offense, withdrawal

presupposes that the defendant committed the offense."  133 S. Ct. at 719.  The Court therefore

distinguished withdrawal from conspiracy from defenses that "negate an element of the crime"

or "controvert any of the elements of the offense itself," for which there is "[a] constitutional

duty to overcome the defense beyond a reasonable doubt."  Id. at 719.

The Second Circuit treated withdrawal from conspiracy the same way in United States v.

Hamilton, 538 F.3d 162, 174 (2d Cir. 2008) (Gov't Mot. at 23), another case relied on by the

Government, because "the defendant's eventual withdrawal from the conspiracy negates none of

these elements [of the offense of conspiracy]."  The Government's other authorities on

affirmative defenses that do not negate any element of the offense (and therefore do not

necessarily shift the burden of proof) are also not on point.  Indeed, all reaffirm the basic rule

that defenses negating an element of the offense must be proven by the Government beyond a

reasonable doubt.  See Patterson v. New York, 432 U.S. 197, 207-210 (1977) ("the Due Process

Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included

---

[9] The court also reasoned that it would be "impossible" for "the prosecution to establish the
existence of facts within the special knowledge of the defendant" (347 F.3d at 10), which is not
an issue for the Section 951(d) defenses (and the Government does not contend otherwise).

Americas 91121627

in the definition of the offense"; however the affirmative defense of extreme emotional disturbance "does not serve to negative any facts of the crime which the State is to prove in order to convict of murder," but instead "constitutes a separate issue"); <u>Dixon</u> 548 U.S. at 6-8 (2006) ("the existence of duress normally does not controvert any of the elements of the offense itself").[10]

Here, Section 951(d), including the Sponsored Person Exception and Legal Commercial Transaction Exception, define the element of "agent of a foreign government" for purposes of a Section 951 offense. Thus, as a matter of statutory language and constitutional principle, the Government bears the burden of disproving these exceptions beyond a reasonable doubt, and the jury should be so instructed. Accordingly, Gov't Mot. #4 should be denied.

## II. Defendant Has A Constitutional Right to Present Evidence on the Sponsored Person Exception and the Law of the Case Doctrine Does Not Preclude Him from Doing So

The Government's argument that the law of the case doctrine applies to preclude the jury from considering the Sponsored Person Exception, and the Defendant from presenting evidence or argument on this exception, misapprehends that doctrine and would impermissibly interfere with Defendant's constitutional right to present a defense. Consequently, Gov't Mot. #2 should be denied.

### A. The Constitutional Right to Present Evidence

Whether characterized as an element of the crime, a defense to liability or an affirmative defense, a criminal defendant is entitled to present evidence on a defense that negates his liability

---

[10] The Government wrongly contends that <u>Mayo</u>'s holding that the Government bore the burden of disproving the antique firearms exception beyond a reasonable doubt was abrogated by <u>Smith</u> and <u>Dixon</u>. (Gov't Mot. at 22 n.5) In fact, all three cases apply the same standard in holding that where a defense or exception negates an element of the offense—which was the case in <u>Mayo</u> but not in <u>Smith</u> or <u>Dixon</u>—the Government must disprove that defense or exception beyond a reasonable doubt.

Americas 91121627

for the crime charged.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'") (citations omitted).  In Crane, the lower court violated this axiom by not allowing defendant to present evidence relating to the circumstances under which he provided a confession.  Id. at 685-86.  In reversing, the Court said that the excluded evidence went directly to a crucial element of the government's case—defendant's confession and whether it was credible.  Id. at 689 (noting that it did not matter that the lower court had ruled *pre-trial* not to suppress the confession).  The opportunity to be heard "would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on . . . evidence [that] is central to the defendant's claim of innocence.  Id. at 690 (i.e., the credibility of the confession).  Here, nothing could be more central to Defendant's claim of innocence than evidence showing that Mr. Buryakov never came within the ambit of Section 951(a) because under Section 951(d) and/or 28 C.F.R. § 73.1 because he was a Sponsored Person.

Defendant also is entitled to have the jury instructed on (and therefore to present evidence on) any recognized defenses.  For example, in Mathews v. United States, the defendant was accused of accepting a bribe.  The lower court refused to charge the jury on entrapment because the defendant refused to admit all the elements of the crime.  In reversing the conviction, the Supreme Court held that "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."  485 U.S. 58, 63 (1988).  But the Court then made clear that "sufficiency" is a low bar.  In Mathews, this meant that defendant was so entitled *even though* as a matter of fact he denied the elements of the crime, such that the defense contradicted the defendant's pleading.  Id. at 63, 65.

Americas 91121627

In <u>United States</u> v. <u>Goldson</u>, the Second Circuit followed <u>Mathews</u> in reversing defendant's conviction for assaulting a federal officer.  954 F.2d 51 (2d Cir. 1992).  Defendant sought an instruction that he had acted under the mistaken belief that the person he assaulted was a private citizen—<u>i.e.</u>, negating a factor required for the crime.  954 F.2d at 53-54.  The lower court refused to so instruct the jury because there "was not a shred of evidence" to support the defense.  <u>Id.</u> at 54.  The Second Circuit, however, held that "[t]he fact that Goldson's requested jury instruction was inconsistent with his testimony was not a correct reason for the court to have refused to give the instruction . . . because defendants should be permitted to present wholly inconsistent defenses."  <u>Id.</u> at 55-56 (citing <u>United States</u> v. <u>Durham</u>, 825 F.2d 716, 718-19 (2d Cir. 1987) (reversing conviction for conspiracy to commit arson where lower court refused to give requested instruction which was specifically directed at negating an element of the crime)).

Here, Defendant is entitled to offer evidence on, and have the jury instructed on, the Sponsored Person Exception (as well as the Legal Commercial Transaction Exception).

### B. The Law of the Case Doctrine Does Not Apply to Preclude the Sponsored Person Exception

That this Court considered VEB's relationship with the Russian Federation at the motion to dismiss phase does not prevent Mr. Buryakov from presenting evidence of his status as a Sponsored Person to the jury and having the jury determine the issue.  Indeed, in attempting to use the law of the case doctrine to argue otherwise (Gov't Mot. at 13-17), the Government would have this Court ignore the well-settled principle that "[i]f a motion to dismiss [an indictment] is denied, the findings of the court adverse to the defendant may *not* be used against him at trial."  Wright and Leipold, Federal Practice and Procedure § 194 (2008) (emphasis added).  The reasons for this are well-accepted:  At the motion to dismiss stage the court accepts as true allegations in the indictment, *and* applies a lower standard than that of beyond a reasonable

13

doubt.  See United States v. Sampson, 371 U.S. 75, 78-79 (1962) (accepting the indictment as true and ruling on sufficiency of evidence); In re Winship, 397 U.S. 358, 364 (1970) (standard of proof).  Tellingly, the Government cites no case in which the denial of a motion to dismiss an indictment was used as a predicate for later precluding a defense under the law of the case doctrine.[11]

In deciding that VEB was not as a matter of law a "foreign government" at the motion to dismiss phase, the Court could not have removed the issue from trial for at least three reasons:

*First*, as argued above, the Sponsored Person Exception is an exception to the statutory definition that the Government bears the burden of proving beyond a reasonable doubt.  It is axiomatic that the Court cannot grant the Government what would be in effect a directed verdict or summary judgment as to an element of an offense in a criminal case.

*Second*, as the cases cited above demonstrate, even if viewed as an affirmative defense, it would be improper to preclude the Sponsored Person Exception from being presented to the jury as long as Defendant presents some evidence to raise it, which he will be able to do here.

*Third*, even if the law of the case doctrine could apply in situations like this—which constitutionally it cannot—by the normal terms of the doctrine it is inapplicable.  On the motion to dismiss, the Defendant presented only a limited set of facts of which the Court could take judicial notice because on a motion to dismiss the Defendant may not contest facts alleged in the indictment.  The only question presented was whether on those limited facts, and with all inferences drawn in the Government's favor, Defendant could establish a defense to the crime as a matter of law.  (July 29, 2015 Hr'g Tr. 47 (Hershman Decl., Ex. E)).  In denying that motion,

---

[11] In Simpson the court did preclude evidence, but that was because there were no facts in dispute related to the element at issue, not under the law of the case doctrine.  929 F. Supp. 2d at 180.  Here there will be abundant facts as to the status of VEB and Defendant as a Sponsored Person.

14

the Court could not have been deciding that Defendant was now precluded from *placing more facts* before the jury *and from contesting facts and inferences* offered by the Government so as to test that same defense.  Hence, the *only* law of the case that could have been made related to whether (i) VEB's status as a wholly-owned entity of the Russian Federation, and (ii) its charter expressly providing that VEB carry-out essential Russian government trade development functions was enough to bring VEB within Section 951(d)(2)-(3) *as a matter of law*, such that Mr. Buryakov's receiving a visa from the Department of Homeland Security brought him within this exclusion from registration under Section 951.  Those were the only limited facts and arguments placed before the Court by either party (as noted by the Court).  Id.  That was the only limited "issue" on which the Court's denial of the motion to dismiss could possibly establish law of the case.

Under the law of the case doctrine, whether an "issue" has been determined depends on the stage of the proceedings and the parties' burdens *at that stage*.  See Kloess 251 F. 3d at 946-47 (finding that the government need not plead the exception at issue to survive a motion to dismiss the indictment, but that Defendant could introduce evidence as to that element at trial and the government must disprove the defense beyond a reasonable doubt).  Thus, in United States v. Tokash, (Gov't Mot. at 16), the court *accepted all* of defendant's facts as true and found that even if accepted those facts would be insufficient to establish the element at issue.  282 F.3d 962, 967 (7th Cir. 2002).  Cf. Crane, 476 U.S. at 689 (allowing defendant to introduce evidence relating to the circumstances of his confession and noting that it did not matter that the lower court had ruled *pre-trial* not to suppress the confession).  The opportunity to be heard "would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on . . . evidence [that] is central to the defendant's claim of innocence.  Id. at 690 (i.e., the credibility of

the confession).  This Court on Defendant's motion to dismiss never considered *all* of Defendant's facts—rather it only considered a very limited set of facts that could be considered at the motion to dismiss phase.[12]

None of the cases cited by the Government involved a ruling in an earlier stage based on different facts and presumptions precluding a defense in later stages where the burdens and/or facts had shifted.  Rather, the cases cited by the Government involved challenges to rulings where the same facts and burdens would have applied to the later challenge—and the law of the case doctrine could be used to preclude relitigation of the *same* issue previously decided.

For example, in United States v. Carr, (Gov't Mot. at 12-13), there had been a full trial and the court had considered the full record at sentencing.  557 F.3d 93, 101 (2d Cir. 2009).  The defendant attempted to challenge this ruling, asking the court to redo that phase of the proceeding using the same factual record.  This the Second Circuit would not allow.  Id. at 102. Similarly, in Arizona v. California, (Gov't Mot. at 12-13), after a final adjudication on the merits, certain Tribes and the United States asked that new facts be used to reconsider the final ruling.  460 U.S. 605, 617-18 (1983).  As in Carr, reconsideration would have been made at the same stage of the proceedings using the same burdens of proof.  Id. at 623-26.  Even in United States v. Simpson, (Gov't Mot. at 17), which did not purport to rely on the law of the case doctrine, the facts at issue in the earlier ruling were not in dispute so the court only had to decide,

---

[12]  Similarly, in United States v. Bailey, (Gov't Mot. at 16-17), defendant had the burden of proof on the element at issue and the court accepted all of defendant's facts as true in determining that defendant could not meet that burden.  444 U.S. 394, 417 (1979).  Further, in Simpson, (Gov't Mot. at 17), the facts were not in dispute, so defendant effectively had all facts taken as true in the court's ruling that defendant could never prove a particular defense.  929 F. Supp. 2d 177, 180 (E.D.N.Y. 2013).  Finally, in United States v. Whicker, the district court precluded evidence relating to a "defense" to the crime charged that was not, in fact, actually a defense to the crime charged.  No. 14-6555, 2015 WL 5845799, at *3-4 (6th Cir. Oct. 8, 2015).  In not one of the Government's cases was a defendant precluded from presenting evidence relating to an element or a recognized defense except after the defendant's facts were assumed as true.

16

as a matter of law, how to apply the law in issue to an agreed-upon set of facts.  929 F. Supp. 2d 177, 180 (E.D.N.Y. 2013).

Whether viewed as an exception to the statutory definition (which it is) or an affirmative defense, Mr. Buryakov is entitled to present to the jury the Sponsored Person Exception based on *all of the factual evidence* that he will elicit at trial.

### III.   Defense Counsel's Prior Assertions Regarding VEB's Status Are Not Relevant And, In Any Event, Are Substantially More Prejudicial Than Probative

If evidence is permitted on the Sponsored Person Exception, the Government seeks to offer various statements made by defense counsel in connection with *Curcio* proceedings (the "Curcio Statements") as *fact* evidence that VEB is not a part of the Russian Federation for purposes of 18 U.S.C. § 951(d)(2)-(3).  Because the Curcio Statements addressed a separate *legal issue* it would be inappropriate to admit counsel's legal arguments on that legal issue as statements of fact, and Gov't Mot. #5 should be denied.  (If they were to be admitted Defendant should be permitted to put them into their full and proper context which would effectively require a mini trial just on these statements.)

#### A.   The Curcio Statements.

The statements the Government seeks to admit are as follows:

- "VEB is a free-standing company under Russian law. It is not an arm or agency of the Russian government, but has a separate and independent corporate existence that is well-recognized under U.S. law."  (Gov't. Mot. at 8; 25) (citing May 14, 2015 Letter of Scott Hershman ("May 14 Letter") at 2 (Dkt. No. 30)).

- "VEB's ownership is not an issue in this case and creates no independent basis for a conflict because the underlying offense has nothing to do with VEB's relationship with the Russian Government." (Gov't Mot. at 9; 25) (citing May 14 Letter at 2).

- In response to the Court's question of whether counsel argued that "VEB is a freestanding company under Russian law; it is not an arm or agency of the Russian government, but has a separate and independent corporate existence that is well-recognized under U.S. law," counsel stated "Yes.  And that is correct" and "we answered accurately."  (Gov't Mot. at 25) (citing July 29, 2015 Hr'g Tr. 41, 43 (Hershman Decl., Ex. E)).

**B.   The Curcio Statements Concerned a Legal Argument on Whether for Conflict Purposes VEB Constituted a Separate Entity from the Russian Federation.**

Courts may conduct *Curcio* proceedings when a party other than the criminal defendant is responsible for paying his legal fees.  These proceedings are fundamentally concerned with the potential for a conflict of interest to arise between a criminal defendant and the party paying his legal fees.  United States v. Locascio, 6 F.3d 924, 932 (2d Cir. 1993); See generally (May 7, 2015 Government Letter) (Dkt. No. 23).  The Curcio Statements that the Government seeks to use were made under those limited circumstances, and indeed, in response to questions from the Court about whether VEB could pay for Mr. Buryakov's legal fees without creating a conflict of interest.

The Government's present effort stems from counsel's May 14 Letter, which then became a subject of argument at both the *Curcio* proceeding and Defendant's motion to dismiss the indictment.  The Government's motion, however, has removed the Curcio Statements entirely from their limited context.

The May 14 Letter was specifically offered to show three things as to which the Court had inquired (at a May 12, 2015 hearing):  (i) that Defendant had retained his counsel and that counsel represented only Mr. Buryakov in this proceeding; (ii) that VEB's agreement to pay

18

counsel's fees "does not affect [counsel's] ability to represent Mr. Buryakov"; and (iii) that "the fact that the Russian State is the ultimate owner of VEB's shares does not create a conflict where none otherwise exists."  May 14 Letter at 1 (emphasis added).[13]  The fact of Russia's share ownership was the *only fact* on that issue asserted in the entire May 14 Letter.  The Government did not include this part of the May 14 Letter in the Curcio Statements.

In addressing the third listed *Curcio* issue, counsel stated:  "In this proceeding and under these circumstances there is no conflict of interest simply because a third-party is paying the defendant's legal fees."  May 14 Letter at 2.  On that issue—and that issue only—counsel then stated that the fact "that VEB's shares are owned by the Russian State does not create an issue." Id.  But the only legal issue before the Court—and the only issue counsel was addressing—was whether, as a matter of law, Russia's ownership of VEB's shares created an automatic conflict that needed to be addressed under *Curcio*.

For purposes of answering only that query, Defendant's counsel made two legal arguments—i.e. applied legal principles to a single fact (Russia's ownership of VEB's shares). *First*, that U.S. law generally respects corporate separateness even where entities are owned or controlled by the same sovereign.  It was in the context of that legal proposition that counsel made one of the Curcio Statements now offered as "fact evidence" by the Government:  "VEB is a free-standing company under Russian law.  It is not an arm or agency of the Russian government, but has a separate and independent corporate existence that is well-recognized under U.S. law."  That legal argument was supported by two cases both relating to the U.S.

---

[13] See May 12 Hr'g Tr. 21 regarding the Court's questions about whether, if the "Russian Federation" was ultimately the party responsible for Mr. Buryakov's legal fees, a conflict of interest between Russia and the Defendant could arise at some point.  (Hershman Decl., Ex. D) Counsel's argument was that the fact of Mr. Buyakov's legal fees being borne by VEB, an entity owned and controlled by Russia, was not the same thing as the Russian Federation paying those fees for conflict purposes.  Id. at 5.

Americas 91121627

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-11 ("FSIA").[14]  The legal conclusion then drawn was that "Hence, the Russian State is not paying for Mr. Buryakov's defense[.]"  May 14 Letter at 2.

*Second*, that, in any event, as a matter of fact the Government had made no criminal or other assertions against VEB or with regard to VEB's ownership such that—as a legal matter—the criminal proceedings against Mr. Buryakov did not implicate VEB so as to create a conflict. May 14 Letter at 2.  That the legal issue of a potential conflict was the only point being made is confirmed by counsel citing two criminal cases involving *Curcio* issues.  Id.  It was only after making clear why this point was being offered that Defendant's counsel made another Curcio Statement that the Government wants to offer as "fact" evidence on the status of VEB under Section 951:  "VEB's ownership is not an issue in this case, and creates no independent basis for a conflict because the underlying offense has nothing to do with VEB's relationship with the Russian Government."  Id.

The Government now ***omits*** both the prior statement regarding its not having implicated VEB in this case ***and*** the two *Curcio* cases cited after the sentence, which confirm that counsel for Defendant was making a legal argument as to why no *Curcio* conflict existed.  (The Government also omits the next sentence after those cases, which said that the Government had offered no evidence of its own to show that any conflict existed under these circumstances.)

The third Curcio Statement relates to the motion to dismiss.  Counsel advanced the legal argument (based on VEB's ownership by Russia and the terms of its charter) that, based on FSIA and state official immunity cases, as a matter of law VEB should be viewed as a "foreign

---

[14] Those two cases were First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba, 462 U.S. 611 (1983) and EM Ltd. v. Republic of Argentina, 473 F.3d 463 (2d Cir. 2007).  May 14 Letter at 2.  An examination of both cases shows that they only address FSIA issues.  Neither in any way relates to Section 951.

government" under Section 951.   Those cases were cited in the absence of any case law

interpreting "foreign government" under 28 C.F.R. § 73.1.[15]   The third Curcio Statement was

said when the Government attempted to use the Curcio Statements from the May 14 Letter to

blunt the non-Section 951 authority cited by Defendant.   In response, Defendant's counsel made

clear again the limited scope of the legal arguments in the May 14 Letter.[16]   In sum, the only

*facts* offered at the *Curcio* stage were (i) that VEB's shares are owned by Russia; and (ii) that the

Government had not implicated VEB in this case.   All other statements were legal arguments not

factual assertions—and it is those *legal arguments* that the Government now improperly wants to

use as fact evidence with the jury.

No case cited by the Government allows legal arguments to be offered as fact evidence to

the jury.   Rather, the Government's motion "relies on a misunderstanding of the nature of

judicial admissions, which are statements of fact rather than legal arguments made to a court."

New York State Nat'l Org. for Women v. Terry, 159 F.3d 86, 97 n.7 (2d Cir. 1998).   Admission

of statements by counsel is appropriate "only where the statements made …are clear and

---

[15] Indeed, interpretations of the scope of Section 951 have been limited:  (i) the law is not limited by its terms to national security breaches or criminal conduct; and (ii) some "act" is required to satisfy the statute.  See United States v. Duran, 596 F.3d 1283, 1293-95 (11th Cir. 2010); United States v. Latchin, 554 F.3d 709, 715 (7th Cir. 2009).

[16] Defense counsel explained that the Curcio Statements were made "in connection with the *Curcio* proceedings, for a totally different purpose[,] and were made "to address [the Court's] question concerning the payment of fees and the separateness of VEB." ((July 29 Hr'g. Tr. 40 (Hershman Decl., Ex. E).   Later in that argument, defense counsel again noted the limited context in which the Curcio Statements were made by noting that they "concern[ed] [the Court's] question *at the time, which related to the payment of fees only*." (Id. at 41) (emphasis added). Defense counsel then explained that these statements "did not address" VEB's status under the definition of foreign government in Section 951 or its implementing regulations and "[were] not relevant to the determination the Court needs to make that pursuant to [28 C.F.R. §] 73.1 and [Section] 951 … VEB is a foreign government." (Id. at 41-42).   Defense counsel also noted the same thing in its reply brief on the motion to dismiss.  (Defendant's Reply Memorandum of Law at 5, n.7 (Dkt. No. 56)) ("The May 14 [L]etter made clear that, for the purposes of identifying any potential conflict with respect to the payment of Defendant's legal fees, VEB is a legally distinct entity from Russia.").

21

unambiguous admissions of fact and not legal arguments or theories . . . ." <u>Callahan</u> v. <u>U.S. Filter, Inc.</u>, 2005 U.S. Dist. LEXIS 49507, at *6 (W.D.N.Y.) (finding statement defendant sought to introduce was "not really a binding ***statement of 'fact,'*** but rather a statement of a legal theory, expressed by plaintiff's ***counsel*** in the context of a summary judgment motion.  Such theoretic statements made by ***counsel*** are not intended to constitute binding admissions of fact.") (emphasis in original)); <u>See</u> <u>United States</u> v. <u>McKeon</u>, 738 F.2d 26, 30 (2d Cir. 1984) (counsel's statement had to be "a clear and unambiguous admission of fact" to be admissible).

Here, the Government cannot meet the difficult standard of showing that the Curcio Statements are "clear and unambiguous" statements of fact, because understood in context they are only legal arguments under *Curcio* or for purposes of a motion to dismiss relating to the legal effect of Russia's ownership of VEB.  <u>See</u> <u>Callahan</u>, 2005 U.S. Dist. LEXIS 49507, at *6-7 (counsel's statements in the context of a summary judgment motion characterizing the business structure of his client's employer were not statements of fact, but statements of a legal theory). Nothing about the Curcio Statements can be fairly characterized as a statement of fact. Accordingly, the Curcio Statements are legal argument that may not be used as fact evidence and Gov't Mot. #5 should be denied.

    **C.**    **What Constitutes a "Foreign Government" under Section 951 Is Different from the Standard for a *Curcio* Conflict or Under the FSIA.**

For the purposes of the Sponsored Person Exception, it is the definition of "foreign government" found in 28 C.F.R. 73.1(b) that determines whether VEB constitutes a "foreign government."  Thus, whether VEB is considered distinct from Russia for the purposes of Section 951 does not depend on how that relationship is analyzed either for *Curcio* purposes or for FSIA purposes.  Rather, the regulations of Section 951 are a statute-specific definition of "foreign

22

government" that bears no relation to a *Curcio* conflict or to whether a sovereign entity is immune from U.S. jurisdiction under the FSIA.

The regulatory definition of "foreign government" under Section 951 explicitly includes any agency to which certain sovereign authority or functions are delegated.  28 C.F.R. § 73.1(b).  Notably, this definition makes no mention of what fact evidence may be used to show this.  As such, VEB's share ownership and charter, even if not a legally dispositive factor for motion to dismiss purposes, is relevant to the jury's considerations.  What are not relevant are the *Curcio*-related legal arguments based on those facts.

### D.  Admitting Defense Counsel's Statements Regarding VEB in the Curcio Proceedings Would Only Confuse and Mislead the Jury

As explained above, defense counsel's legal arguments in the *Curcio* proceedings are not admissible facts on whether VEB is a "foreign government" under Section 951.  But even if the Court finds that the statements might be relevant, they still should be excluded because their introduction will waste significant time and will serve only to mislead and/or confuse the jury.

Under the Rule of Completeness, the *Curcio* pleadings and Motion to Dismiss briefing and related transcripts would have to be read to the jury so that it could understand the full context described above.  Fed. R. Evid. 106.  But this need for completeness is yet another reason to exclude this evidence, as it will ensnare the jury in purely legal questions relating to the *Curcio* proceedings or the motion to dismiss the indictment.

### E.  The Government's Suggestion that White & Case Should Be Disqualified Is Meritless.

Because, as discussed above, the Curcio Statements should not be presented to the jury, this Court need not grant the Government's suggestion (in a footnote) that White & Case may need to be disqualified.  Disqualification is not warranted under these circumstances and would

substantially delay the trial.   Thus, if the Court allows the Government to present these statements to the jury, the appropriate approach would be to present them in a way that eliminates any potential disqualification issue.   This would include (i) allowing other statements to be used to ensure that the statements are complete; (ii) redacting the names of counsel; and (iii) prefacing the statements introduced by saying "an attorney who represented the defendant stated."


Dated:          March 8, 2016
                New York, New York

                                                          Respectfully submitted,

                                                          /s/ Scott Hershman
                                                          Scott Hershman
                                                          Daniel Levin
                                                          Owen C. Pell
                                                          Gregory G. Little
                                                          Kimberly A. Haviv
                                                          1155 Avenue of the Americas
                                                          New York, New York 10036
                                                          Tel.: (212) 819-8200
                                                          Fax:  (212) 354-8113

                                                          *Attorneys for Evgeny Buryakov*