G33aaburc                    Conference

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           v.                              15 CR 73 (RMB)

EVGENY BURYAKOV, IGOR
SPORYSHEV and VICTOR PODOBNYY,

                Defendants.

------------------------------x
                                           New York, N.Y.
                                           March 3, 2016
                                           11:00 a.m.

Before:

                    HON. RICHARD M. BERMAN,

                                           District Judge


                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
STEPHEN RITCHIN
EMIL BOVE
BRENDAN QUIGLEY
     Assistant United States Attorney

SCOTT HERSHMAN
     Attorney for Defendant Buryakov
```

1             (Case called)

2             THE COURT:  Please be seated.

3             So I'll note at the outset that we have a Russian

4    language interpreter and we usually do that as standby process

5    and ask Mr. Buryakov -- well, first of all, I guess we don't

6    need an interpreter word-for-word; is that fair to say?

7             MR. HERSHMAN:  That's fair, your Honor.

8             THE COURT:  Just a standby precaution, OK.

9             Second, we had at my initiation we had a brief

10   telephone conference yesterday at which it was my intention to

11   give the lawyers for each side a heads-up that I would be

12   asking first, we would do the arraignment today on the new

13   superseding indictment, an S1 superseding indictment in this

14   case and that I would ask counsel for the government briefly to

15   describe S1 and how it differs from the previous indictment.

16            MR. BOVE:  Yes, your Honor.  Thank you.

17            The S1 superseding indictment contains the same

18   charges that were in the underlying document.  The differences

19   are that the S1 streamlines some of the allegations, in

20   particular, omits the overview section.  It also alleges new

21   overt acts that relate to more specific incidents individually

22   one-by-one as opposed to overt acts alleged in the underlying

23   indictment.

24            THE COURT:  So there are still two counts; isn't that

25   right?

1              MR. BOVE:  Yes, judge.
2              THE COURT:  Could you just briefly identify what those
3     two counts are.
4              MR. BOVE:  Yes, your Honor.
5              Count One charges Mr. Buryakov as well as Igor
6     Sporyshev and Victor Podobnyy with participating in a
7     conspiracy to violate Title 18 U.S.C. Section 951.  And Count
8     Two charges those same defendants with the substantive
9     violation of Section 951.
10             THE COURT:  OK.  Thank you.
11             Mr. Hershman, let me ask whether you have -- I'm sure
12    have you but let me ask any way for the record whether you
13    received this superseding indictment?
14             MR. HERSHMAN:  Yes, your Honor, we've received it.
15             THE COURT:  And whether you have discussed it fully
16    with Mr. Buryakov?
17             MR. HERSHMAN:  I have, your Honor, and I have some
18    comments that I wanted to make about it whenever appropriate.
19             THE COURT:  Well, in a minute.  First, let's complete
20    the arraignment.  And did you wish to have me read it publicly
21    at this time?
22             MR. HERSHMAN:  No.  We would waive the public reading.
23             THE COURT:  What plea would Mr. Buryakov like to
24    enter?
25             MR. HERSHMAN:  Not guilty.

1  THE COURT:  OK.  So do you want to comment on the S1?
2  I'll hear it.
3  MR. HERSHMAN:  Yes, briefly, your Honor, because it
4  does relate directly to motions that are before your Honor that
5  were filed the other day and I was a little troubled by what I
6  heard yesterday during our conference with the Court regarding
7  the purpose of the S1 which was to make it trial ready.  I'm
8  not really sure I understand what that is but --
9  THE COURT:  What was your trouble?
10  MR. HERSHMAN:  Well, the point is that we started this
11  case with a complaint which was quite sensational and had a
12  number of detailed allegations out of a spy novel of overt acts
13  that no longer appear anywhere in the indictment.  So, for
14  example, there were clandestined meetings.  There were secret
15  codes.  There were passings of bags and all sorts of
16  sensationalisms and details relating to spy craft.  A number of
17  meetings that were in the complaint were huge, four dozen
18  meetings in one particular case.  The way that these meetings
19  were described, clandestined methods and coded messages was
20  quite elaborate and that served as the basis for the bail
21  application that was made during the first arraignment on the
22  complaint and before the magistrate.
23  That complaint was followed by an indictment which was
24  a public document that contained allegations still of
25  Mr. Buryakov and other defendants being members of the Russian

1   Foreign Intelligence, the SBR, and working together to gather
2   all sorts of information and it still contained this overview
3   that was just referred to and a whole host of allegations that
4   now seem to have disappeared from S1, where we have now a very
5   plain boilerplate indictment that says nothing about SBR,
6   nothing about secret meetings and books and tickets and all
7   sorts of other lists and things that were specified in the
8   complaint.  And I guess I'll leave to the trial the
9   cross-examination of the agent who swore in the complaint and
10  made these false allegations in the complaint concerning all of
11  that and those coded messages and the like.  I don't know
12  whether that person is going to testify or not.  I hope so.
13           But what we have now, your Honor, is an indictment
14  that essentially alleges that by acting as a DEB representative
15  and speaking with a representative of the Russian mission,
16  Mr. Buryakov is somehow guilty of failure to register of 951
17  with no reference at all to --
18           THE COURT:  Let me just understand something here.
19  So, is it your contention that the offenses charged in S1 would
20  have any different United States Sentencing Guidelines range or
21  impact under this S1 as the original complaint or the first
22  indictment?
23           MR. HERSHMAN:  I think the sentencing guidelines may
24  not change, your Honor, but the nature of the allegations are
25  significantly different and the state of affairs is

significantly different.  And you know, I believe that they removed all of this from the complaint first and then from the second, the first indictment second to get us to the point that we are now because they know that the government knows that it's not provable and we have these motions which are pending which relate directly to it.

And I just wanted to point out that this is our observation of the S1 which is significantly different than it was just to make the complaint, the indictment so-called trial ready and public.  The other indictment was just as public as this by the way as was the complaint, and that we have filed a number of motions that address these issues.

THE COURT:  So are you saying that the motions are no longer or some of them not pertinent?

MR. HERSHMAN:  No.  The motions are now more pertinent than they were before.

THE COURT:  So I'm trying to figure out if you are saying there was any prejudice to you as a result of the filing of the S1.

MR. HERSHMAN:  The prejudice relates really to Mr. Buryakov's status, his bail status frankly.  To be honest, I think that had this S1 been the charging instrument at the time of the bail application initially that circumstances would be very, very different.  I think that it does impact the import of our motions significantly and we've addressed the

1     issues that we think S1 raises in these motions in limine.
2             THE COURT:  For the record, no bail application or
3     review has ever been sought before me.
4             MR. HERSHMAN:  Correct.  And I'm not ruling out that
5     we weren't going to --
6             THE COURT:  You are always entitled to that.  You do
7     that in writing.
8             MR. HERSHMAN:  Yes.  We understand your Honor wants
9     that in writing, so we.
10            THE COURT:  OK.  Did you want to comment?
11            MR. BOVE:  Yes, your Honor.  The filing of an
12    indictment like the S1 in this case that simply tracks the
13    statutory language as the parties prepare for trial is a
14    frequent and common practice in this district.  Our position is
15    that defense counsel has read far too much into the differences
16    between the underlying indictment and this document.  The
17    complaint in this case still stands.  Our theory of the case as
18    it relates to the relevance of the SBR has hot changed.
19            As defense noted, these are issues that are raised in
20    motions that they filed this week.  We'll respond in due course
21    pursuant to the schedule by the Court and make very clear our
22    that our theory and the way we will be presenting evidence in
23    this case and the relevance of SBR are very much on the table
24    as they have been throughout the case.
25            THE COURT:  All right.  So as we're heading toward

1    trial and as I indicated in the telephone conference yesterday,
2    I was going to and am raising the issue, I've sent the notice
3    out yesterday dated March 2, 2016 inquiring of counsel whether
4    the issues raised in Missouri v. Frye and Lafler v. Cooper, two
5    Supreme Court decisions, have been fully explored with
6    Mr. Buryakov.  And in particular what I wanted to ask for the
7    record is whether Mr. Buryakov is fully aware of all of his
8    options that he might have to resolve this case other than
9    going to trial.
10            So that implicates the question of whether there are
11   plea discussions or plea negotiations or whatever and whether
12   all of that has been communicated to Mr. Buryakov.  So I'll
13   hear first from counsel and then if it's OK with counsel, I'll
14   ask Mr. Buryakov if he feels that he understands fully what his
15   alternatives or options are.
16            MR. HERSHMAN:  That's fine with me, your Honor.  You
17   are welcome to ask Mr. Buryakov those questions.  There's no
18   issue that we have reviewed fully all of the implications that
19   are addressed in Frye and Lafler, not just after your Honor's
20   call but during the course of the representation.
21            And Mr. Buryakov as you've just heard him plea is not
22   guilty to the charges.  And briefly our view on the S1 which --
23   and we have these motions which we believe will resolve the
24   matter in Mr. Buryakov's favor.
25            THE COURT:  So have there been any discussions about

1  resolving short of a trial and have they been passed along to
2  Mr. Herschman and to Mr. Buryakov?
3          MR. BOVE:  I can address the first part of that, your
4  Honor.  There were negotiations in late summer and early fall
5  of 2015 as well as last month.  In neither of those instances
6  did the government formally extend a plea offer.
7          THE COURT:  OK.  So then, Mr. Buryakov, let me just
8  ask you for the record, would you feel you have been fully
9  apprized of all of your options in connection with this case
10  which is scheduled to start trial pretty soon?
11          THE DEFENDANT:  Oh, yes, your Honor.  We discussed
12  this with my lawyer and I fully understand the consequences of
13  the implications.
14          THE COURT:  Thank you.
15          So as a housekeeping matter I don't think-- I think
16  I've got enough submissions.  So I usually at this point and if
17  I have thought about it perhaps even earlier would have said,
18  no more submissions, but I am saying it now.  I think with the
19  exclusion of this mention of a bail application, that's
20  something entirely different.  And there are some responses, of
21  course, to outstanding motions which are not affected at all.
22          Mr. Hershman, the fact that there's an S1, does that
23  impact your ability to be ready?  I think we have a trial date
24  of April 4.  Is that still OK with you?
25          MR. HERSHMAN:  Yes, your Honor.

1      THE COURT:  OK.  I think that really is it.  That was
2 on my agenda for today.  Anybody have anything else?
3      MR. BOVE:  No, your Honor.  Thank you.
4      MR. HERSHMAN:  Thanks, your Honor.  No.
5      THE COURT:  OK.  Somebody had inquired -- I think it
6 was on the defense's side about trial practices.  So I'll spend
7 a minute or so telling you how I pick a jury.
8      So usually, fundamentally, I do a pretty quick trial.
9 That is to say I like to utilize as much of the day as possible
10 with the jury present so that they're not standing around or
11 sitting around in the jury room.  So I move as expeditiously as
12 possible.  I don't do very many side bars.  Sometimes they are
13 necessary and we'll have them.  They're mostly, in my
14 experience, held during the course of the voir dire which gives
15 the potential juror an opportunity to discuss private issues,
16 essentially, private to them that they don't want to discuss in
17 public.
18      Now as to selection, we've asked for a pool of 75.  We
19 begin with for cause a series of for cause questions trying to
20 determine whether for legal reasons people would not be
21 appropriate to serve as jurors.  So for example, if they're
22 related to one of the parties or the lawyers, etc.
23      And once we finish the for cause we move to preemptory
24 challenges.  In this case we would probably want to select 15
25 jurors.  Twelve would ultimately be the primary jurors and

1   three would be alternates.  So to get to that number we would
2   need to seat initially 33 jurors.  The defense gets ten
3   peremptory challenges.  The government gets six.  And then for
4   the alternates, each side gets one additional preemptory
5   challenge.
6            We call the names of the jurors randomly from the
7   wheel.  If a juror has responded affirmatively to any of the
8   questions that have been posed by the Court up until that
9   point, we ask them to come up and explain the answer and or if
10  there are any additional 'yes' answers.
11           If a juror is called randomly, if their name is picked
12  randomly out of the wheel literally and they have no 'yes'
13  answers they can proceed directly to the jury box.  As I say,
14  we'll seat between the jury box and the first row or two in the
15  audience 33 people in order to wind up with 15 following the
16  peremptory challenges.
17           Your estimates are probably as good or better than
18  mine as to how long the trial will last.  It will go however
19  long it needs to go so that the defendant gets a fair trial.
20           I think that's about it unless anybody has any
21  specific questions.
22           MR. HERSHMAN:  Your Honor, I just want to introduce to
23  the Court two of my colleagues.  One may be familiar to you,
24  but on my far right is Kim Haviv and Greg Little.
25           MR. LITTLE:  Good morning, your Honor.

1      THE COURT:  They'll be assisting you at trial?

2      MR. HERSHMAN:  Yes, among and with Mr. Levin.

3      THE COURT:  I forget if you've already submitted

4  everybody's name and we'll want to mention that.

5      MR. HERSHMAN:  I think we have.  We're all good there.

6      THE COURT:  OK.

7      MR. HERSHMAN:  We may have a question about --

8      MR. LITTLE:  On the side bar when someone answers

9  affirmatively and we come up, will your Honor be asking all of

10 the follow-up questions?

11     THE COURT:  Yes.  It's usually pretty obvious.  If I

12 miss something an attorney might catch my eye and say, could

13 you ask this or something like that, but usually it's pretty

14 straightforward and pretty obvious.

15     Great.  All right.  Well, I think that concludes our

16 work for today.  We'll see you on March 10 or our pretrial

17 conference.

18     Good to see you all.

19                         (Adjourned)